J-S34031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.R.P., a/k/a K.P., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.P., MOTHER | : : : : : : : | |
| | : | No. 669 WDA 2023 |

Appeal from the Order Entered May 17, 2023
In the Court of Common Pleas of Allegheny County
Orphans' Court at CP-02-AP-0000211-2021

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: October 27, 2023**

M.P. (Mother) appeals from the order granting the petition of Allegheny County Office of Children, Youth & Families (CYF), and terminating Mother's parental rights to her daughter, K.R.P. a/k/a K.P. (Child).[1]  After careful consideration, we affirm.

---

[1] CYF petitioned to terminate the parental rights of Child's father, identified as A.W., and "any putative unknown father," on grounds of abandonment. *See* Petition to Terminate, 10/6/21, at ¶¶ 4-5, 13-21.  CYF provided proper notice, but neither A.W. nor any unknown father participated in the termination proceedings.  *See* N.T., 3/3/23, at 3-7; *id.* at 24-25 (CYF caseworker testifying that A.W. knows Child is in CYF's care).  At the conclusion of the termination hearing, the orphans' court stated its finding that CYF "met their burden with regard to [A.W.] and the unknown father …." *Id.* at 128.  However, our review reveals no formal order terminating the parental rights of Child's father.  The absence of an order does not impact Mother's appeal. *See In re H.S.W.C.-B.*, 836 A.2d 908, 910 (Pa. 2003).  Nonetheless, if no order exists, we urge CYF and the orphans' court to seek and/or enter a formal disposition of CYF's petition to terminate the parental rights of Child's father.

CASE HISTORY

Child was born in February 2020. CYF became involved with Mother prior to Child's birth, in October 2014, after receiving reports that Mother was neglecting her newborn first child, M.P. Mother's parental rights to M.P. were terminated in May 2016.[2]

Child tested positive for marijuana at birth. N.T., 3/3/23, at 56. Shortly thereafter, CYF obtained emergency custody of Child based on Mother's "heavy marijuana use,"[3] unstable housing, history of intimate partner violence (IPV), and mental health issues. *Id.* at 9-10.

Child was adjudicated dependent on April 20, 2020. The court found aggravated circumstances due to the termination of Mother's parental rights to M.P., but directed CYF to continue reunification efforts with Child. *See* Petition for Involuntary Termination of Parental Rights, 10/6/21, at Exhibit E; 42 Pa.C.S.A. § 6302. The court ordered Mother to comply with permanency goals of visiting Child, and participating in services to address substance abuse, housing, IPV, and mental health issues. N.T., 3/3/23, at 12. Child was placed with L.A. (Foster Mother) in April 2020. Child continues to reside with Foster Mother, who is a pre-adoptive resource.

---

[2] CYF obtained custody of Mother's third child, J.S., shortly after his birth in September 2021. *See* N.T., 3/3/23, at 8, 11.

[3] According to the CYF caseworker, "Mother stated at the time that she normally smokes three to four blunts a day." N.T., 3/3/23, at 10.

Mother failed to comply with her permanency goals. *See id.* at 13-24, 57-58. The review orders from April 2020 to October 2021 indicate Mother made "no progress" through July 2021, and "minimal" progress from July 2021 to October 2021. *See* CYF Exhibit 5.

On October 6, 2021, CYF petitioned to involuntarily terminate Mother's parental rights. The orphans' court held a termination hearing on March 3, 2023. CYF adduced testimony from Nicholas Cortaszo, the CYF caseworker; Dr. Eric Bernstein, a licensed psychologist and expert in child psychology; and James Middleton, who supervised Mother's transportation and visitation with Child. Mother testified in opposition to termination.

The orphans' court recounted the following evidence:

Mother provided contact information to [CYF caseworker] Cortaszo during the pendency of this matter, but that contact information changed often and resulted in periods of no contact between Mother and CYF. Mr. Cortaszo explained that in addition to multiple phone numbers, Mother has utilized at least nine different email addresses during the case.

Mother has a history of heavy marijuana use, smoking at least four blunts per day. She was referred to [the Pennsylvania Organization for Women in Recovery (POWER)] on three separate occasions and intensive outpatient [treatment] multiple times. Mother started a drug and alcohol program for the first time on January 13, 2023. The goal of addressing her drug and alcohol treatment needs remained unmet at the time of the hearing because Mother had no established history of drug and alcohol treatment. Her significant marijuana use, which affected her daily life, was a large factor in her inability to provide essential parental care and control for [Child].

Similarly, despite a 2020 recommendation that she pursue mental health treatment, Mother's mental health needs remained

unmet throughout the case. Her first engagement with mental health treatment was also on January 13, 2023.

Mother has historically had unstable housing, and was referred to multiple housing assistance programs. She obtained housing in November of 2022, through a program that provided for a rent holiday, but remains unemployed and therefore does not have the means to meet her rent when the assistance expires. Complicating Mother's housing instability, her longest work history is only six months. She has worked for various employers for very short periods of time. While her current housing is appropriate, it is not stable long-term.

As to [Mother's] goal of attending and completing [IPV] counseling, the offered testimony was not clear as to whether Mother had completed counseling.

In-person visitation between Mother and Child began on April 26, 2021, and was conducted virtually prior to this date due to the COVID-19 pandemic. Visits were set to be twice weekly in person and once virtually. A total of 114 virtual visits were offered, and Mother attended 30, or 26.3% of visits.

In-person visits were also inconsistently attended by Mother. In 2021, Mother attended 11 out of 25 in-person visits. In 2022, Mother appeared for 12 of 40 in-person visits. In 2023, she missed all seven visits in January and she missed all five in February. There were 77 total in-person visits offered and 23 visits attended, or 29.8%. Dr. Bernstein opined that the level and frequency of visitation has a direct effect on [Child's] "felt security" and "emotional security." So too, Dr. Bernstein explained, unpredictably participating in visitation can have a negative effect on [a] parent-child bond.

Mother demonstrated a clear understanding of what her goals were. Mother maintained that her marijuana use was not affecting her ability to parent. Mother further maintained that she did not have 100% sobriety as a goal. She deflected questions regarding the reasons she had missed a number of visits and she did not take any accountability for the circumstances in her life that were leading to her instability. Mother insisted that she was able to cover the rent for her home even after the rent holiday, but did not reference any funding source that would allow her to support her needs. Mother demonstrated a stunning lack of

insight into her circumstances throughout the [termination] proceeding and the underlying dependency action. She identified several individuals who would operate as a support for her, including the man who is currently imprisoned for assaulting her, but none of those people appeared or testified at the [termination] hearing. Mother was unable to answer questions about what she does with her time on a daily basis. She was similarly unable to identify what barriers in her life prevented her from more expediently addressing her goals.

By the date of the TPR hearing, Child had been in placement for approximately 37 months. [F]oster [M]other and [Child] have a strong bond, and [F]oster [M]other and [Child] have spontaneous affection, good communication, and a loving relationship. [Foster Mother] meets all of [Child's] physical, emotional, and psychological needs and is a stable placement.

The caseworker explained that Mother is not currently in a position to parent [Child] because she has a long-demonstrated lack of stability and a lack of follow-through. During her evaluation with Dr. Bernstein, Mother did not identify that she needs drug and alcohol or mental health treatment. Mother similarly did not believe she could remain abstinent from marijuana. Dr. Bernstein testified that marijuana can have negative impacts on the ability to parent.

Mother did not accept any responsibility for [Child] being in care; Dr. Bernstein explained that [Mother] "instead blamed [CYF] for unfairly putting their family in her circumstances." In his December 2020 evaluation, Dr. Bernstein recommended mental health treatment, substance abuse treatment, and working towards [marijuana] abstinence. As of December 2020, [M]other was smoking six marijuana blunts per day and was diagnosed with cannabis dependence. As far as it related to the relationship between Mother and [Child], Dr. Bernstein explained that [Mother] has not fulfilled the caretaking capacity for [Child]. That role requires consistent investment in parent responsibilities and visitation. For [Child], that role has been fulfilled by [F]oster [M]other. While Mother and [Child] have a good relationship, the bond between them was not necessarily strong. Dr. Bernstein recommended that any visitation should be supervised because of Mother's substance abuse, IPV concerns, inconsistency, and lack of investment in [C]hild's life. Dr. Bernstein noted that while he

did not believe Mother would put [C]hild in danger, she lacked a certain degree of protective capacity over [C]hild.

Orphans' Court Opinion, 7/11/23, at 4-9 (citations to notes of testimony, paragraph headings, and footnote omitted).

"[B]ased upon this record," *id.* at 10, the orphans' court terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Order, 5/17/23. Mother filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

ISSUES

Mother presents two issues for review:

1.     Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8)?

2.     Did the [orphans'] ourt abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hild pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 8.

DISCUSSION

In considering Mother's issues, we recognize

appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

- 6 -

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which provides for a bifurcated analysis. First, the orphans' court "must focus on the parent's conduct" relative to the "eleven enumerated grounds" for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). *Id.* at 830. If the court finds grounds for termination under Section 2511(a), it must then assesses the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court as to "any

one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." ***Id.***

<u>Section 2511(a) - Grounds for Termination</u>

Instantly, we address Section 2511(a)(8), which provides:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(8) The child has been removed from the care of the parent by the court … 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

To satisfy Section 2511(a)(8), the petitioner must prove: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. ***See In re Adoption of J.N.M.***, 177 A.3d 937, 943 (Pa. Super. 2018). Section 2511(a)(8) "authorizes the trial court to terminate parental rights if the parent has not resolved the conditions which led to placement …." ***Int. of R.R.D.***, 300 A.3d 1077, 1082 (Pa. Super. 2023). The statute does not require that the court evaluate a parent's willingness or ability to remedy the conditions that led to the child's removal or placement. ***See In re M.A.B.***, 166 A.3d 434, 446 (Pa. Super. 2017). Also,

while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as prescribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

Mindful of the above authority, we turn to Mother's challenge to termination under Section 2511(a)(8). Mother's Brief at 20-24. Mother asserts the orphans' court erred in "conclud[ing] Mother had not remedied the conditions that led to the removal of [Child.]" *Id.* at 24. She also argues termination is contrary to Child's needs and welfare. *Id.* at 22.

CYF counters that it presented "overwhelming evidence" of Mother's failure to adequately address or ameliorate her parenting deficiencies to support termination under Section 2511(a)(8). *See* CYF's Brief at 13.[4] We agree.

_____

[4] Child's counsel has not filed an appellate brief. However, during closing arguments at the termination hearing, Child's counsel stated:

Your Honor, it is not something that I normally do, but I'm actually going to agree with [CYF] and the points [CYF's counsel] just made. Minimal progress has been made [by Mother] with regard to mental health, drug and alcohol [services], housing … [and v]isitation is still sporadic. Parenting classes have not been attended, and [Mother] just admitted that she continues to have an ongoing relationship with [A.W.,] who is a person who abused her. I believe that [CYF] has met its burden.

N.T., 3/3/23, at 130.

(1)    *Child has been removed from Mother's care for at least 12 months.*

With respect to the first element of Section 2511(a)(8), there is no dispute that Child has been removed from Mother's care for "12 months or more."  23 Pa.C.S.A. § 2511(a)(8).

(2)    *The conditions which led to removal or placement still exist.*

As to the second element of Section 2511(a)(8), the record supports the orphans' court's finding that the conditions which led to Child's removal or placement continue to exist.  Although Mother argues she has remedied these conditions, the evidence indicates otherwise.

The CYF caseworker, Mr. Cortaszo, testified that Mother did not participate in court-ordered services until January 2023, nearly a year and a half after CYF petitioned to terminate Mother's parental rights.  ***See*** N.T., 3/3/23, at 15-16.  For example, Mother did not obtain a psychiatric evaluation, such that the specifics of her mental health issues remain unknown.[5]  ***Id.*** at 111.  Likewise, Mother did not engage in services for IPV.  ***Id.*** at 24, 32, 38. Mother also testified that she continues regular marijuana use.  Mother stated that marijuana "is the most comfortable and unharmful substance for me and it helps me."  ***Id.*** at 108.   She indicated she had no intention of stopping her marijuana use.  Mother stated, "I do feel that, you know, it's kind of needed

---

[5] Mother testified that she suffers from anxiety and post-traumatic stress disorder (PTSD).  N.T., 3/3/23, at 118.

in my life[.]"  *Id.* at 110.  Between March 2020 and February 2023, Mother appeared for just 1 of 19 scheduled drug screens, and tested positive for THC. *See* CYF Exhibit 4.  She did not participate in court-mandated drug counseling until January 2023, nearly a year and a half after CYF petitioned to terminate her parental rights.  *Id.* at 109.

In addition, Mother's housing remains unstable.  Mr. Cortaszo testified that after Child came into care in 2020, Mother resided with a succession of family and friends.  *Id.* at 16.  Mr. Cortaszo relayed that in November 2022, Mother began living at a property provided through a non-profit organization that awarded Mother a "rent holiday."  *Id.* at 16-17.  Since Mother has no income, Mr. Cortaszo averred that she will be unable to maintain this residence once the rent waiver expires.  *Id.* at 18.  Mother expressed a lack of concern, stating, "I don't understand why [Mr. Cortaszo] thinks there would be a problem taking care of my child financially or something.  That's nonsense to me."  *Id.* at 114.  Mother added, "I can always find different housing."  *Id.*[6]

Consistent with the evidence, orphans' court properly concluded:

> Throughout the life of the case, Mother has never [been] more than minimally compliant with the permanency plan, nor did she ever make more than minimal progress towards alleviating the

---

[6] To the extent Mother claims she temporarily alleviated her lack of housing, the change occurred more than a year after she received notice of the termination petition.  With "any petition filed pursuant to subsection … 2511(a)(8), the court shall not consider any efforts by the parent to remedy the conditions … which are first initiated subsequent to the … notice of the filing of the petition."  23 Pa.C.S.A. § 2511(b).

- 11 -

conditions that originally led to removal. In multiple reporting periods, Mother had no compliance with the permanency plan and had made no progress towards alleviating the conditions that originally led to removal. She is the same person, with the same shortcomings, that she was at removal.

Orphans' Court Opinion, 7/11/23, at 14-15.

(3)  *Termination of would best serve Child's needs and welfare.*

The third and final element of Section 2511(a)(8) concerns Child's needs and welfare. The orphans' court found termination to be in Child's best interest. The record supports this finding.

Dr. Bernstein first interviewed Mother on December 24, 2020. N.T., 3/3/23, at 55. He issued a written evaluation, which included his conclusion that Mother "minimizes her difficulties." *Id.* at 58. Dr. Bernstein also evaluated Mother in October 2022. *Id.* at 61. At the termination hearing, Dr. Bernstein opined that Mother's dependence on marijuana posed an ongoing risk of compromising her level of attention, awareness, supervision, guidance, and support of Child in a parenting capacity. *Id.* at 60. He explained that Mother was "placing herself in a position of essentially being high throughout the day, and her responsibility for a young child of [Child's] age would potentially place that child at risk." *Id.* at 65. Dr. Bernstein testified that Mother's constant intoxication and issues with IPV raised significant doubts about her ability to provide for Child's everyday needs and safety. *See id.* at 88 ("I have expressed concern about [Mother's] misuse of marijuana and domestic violence to the extent that places her or anyone else in her care at

risk."). In addition, Dr. Bernstein noted that Mother's lack of consistent contact with Child negatively impacted her ability to care for Child. ***See id.*** at 89 ("[T]he more inconsistent or even absent a parent is in a child's life, the more impact it will have upon the security of the relationship … with the child.").

Mr. Cortaszo echoed Dr. Bernstein's concerns. Mr. Cortaszo noted Child had "been in care her whole life, 36 months, she just had her third birthday … and she deserves permanency." ***Id.*** at 26. Mr. Cortaszo averred that Mother was unable to care for Child due to her "lack of stability" and "lack of follow through," which create a "high risk" environment. ***Id***.

The testimony of Mother as well as Mr. Cortaszo indicates Mother failed to attend a majority of visits with Child. During COVID restrictions, Mother participated in 30 of 114 virtual visits with Child. ***Id.*** at 18-19. From April 2021 through 2023, Mother attended 23 of 77 visits. ***Id.*** at 21-23, 29-31, 100-01. Mother stated she "felt" like she attended more visits than she missed. ***Id.*** at 112; ***cf.*** Orphans' Court Opinion, 7/11/23, at 6 (calculating that Mother attended less than 30% of visits).

On this record, the orphans' court determined:

> Mother did not even visit consistently (she missed more than two-thirds of both virtual and in-person visits with [Child]), let alone provide the essential parental care and control necessary to parent independently. Her lack of progress or effort towards her goals, combined with her lack of reliability, renders Mother a transitory, unreliable visitor in [Child's] life rather than a caregiver[.]

- 13 -

*Id.* at 17.

In sum, the evidence supports the orphans' court's conclusion that more than 12 months passed since Child's removal or placement; the conditions which led to Child's removal continue to exist; and termination would best serve Child's needs and welfare. Therefore, the orphans' court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(8).

<u>Section 2511(b) - Needs and Welfare</u>

Mother also challenges termination under 23 Pa.C.S.A. § 2511(b). When the court finds grounds for termination under Section 2511(a), it must separately consider Child's needs and welfare:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. ...

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023). Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However,

> **the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case**.

- 14 -

Importantly, **the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship**.

*In re A.H.*, 247 A.3d 439, 444–45 (Pa. Super. 2021) (citations omitted, emphasis added).

Our Supreme Court recently affirmed that "the parental bond is but one part of the overall subsection (b) analysis." *K.T.*, 296 A.3d at 1113. Courts must also consider factors such as: (1) the child's need for permanency and length of time in foster care; (2) whether the child is in a pre-adoptive home and bonded with foster parents; and (3) whether the foster home meets the child's needs. *Id.* It bears repeating that "intangibles such as love, comfort, security, and stability" are relevant to a child's needs and welfare. *See id.* at 1096, 1098, 1106, 1109, 1111 (citations omitted).

Mother argues:

It was an abuse of discretion and/or error of law that supported the [orphans'] court's finding under [Section] 2511(a). Therefore, the [orphans'] court committed an error of law in proceeding to the analysis under [Section] 2511(b) and concluding that termination best meets the needs and welfare of [C]hild.

Mother's Brief at 26. For the reasons discussed above, we disagree.

Mother further asserts:

Mother loves [Child] and has much to offer for her benefit. The relationship between Mother and [Child] adds value to their lives. Termination would be unnecessary and permanently deprive [Child] of her relationship with Mother, and is not best for her needs and welfare. [Child] deserves to have her relationship with Mother preserved, which can only be assured if Mother retains her parental rights.

- 15 -

*Id.* at 27.

Mother does not cite any supporting legal authority. *See* R.A.P. 2119(a) (providing appellant's argument shall include "discussion and citation of authorities as are deemed pertinent."). Moreover, her argument is belied by the record.

Dr. Bernstein noted that Mother had never parented Child. He stated that she "has not fulfilled the caretaking capacity." N.T., 3/3/23, at 63.[7] In addition, Dr. Bernstein testified that "while the interaction [between Child and Mother] appeared generally positive, I would not view the bond as necessarily strong." *Id.*

In contrast, Foster Mother has cared for Child since April 2020, when Child was an infant. According to Dr. Bernstein, Child has a strong parental bond with Foster Mother. *Id.* at 25-26, 37, 89-90. Dr. Bernstein stated that Child "has been dependent on" Foster Mother, and views her as her "psychological parent." *Id*. at 66-67. He also averred that separating Child from Foster Mother could be "potentially traumatic." *Id.* at 67.

Similarly, Mr. Cortaszo stated that in his observations of Child and Foster Mother, "[t]here is spontaneous affection, there is laughter, there is good

---

[7] The orphans' court credited Dr. Bernstein's expert testimony, finding Dr. Bernstein "well-prepared, [and] versed in the facts …." Orphans' Court Opinion, 7/11/23, at 2. The court "placed great weight on [Dr. Bernstein's] recommendations and report based upon his qualifications, level of expertise, and thoughtful and detailed testimony." *Id.*

communication from both, and it's a very loving environment." ***Id.*** at 26. He testified that severing Child's bond with Foster Mother would be detrimental to Child, while severing Child's relationship with Mother would not. ***Id.*** at 40. Mr. Cortaszo noted Child "has been in care her whole life, 36 months," and opined that Child "deserves permanency." ***Id.*** at 26.

> Accordingly, the orphans' court found CYF
>
> demonstrated that [Child] is thriving with [F]oster [M]other in a pre-adoptive home. She has been in care virtually her entire life, more than three years. Foster [M]other meets [Child's] emotional and physical needs, and provides a loving, safe, and stable environment. This lengthy period of care with a reliable and effective parental figure stands in stark contrast to Mother's history throughout the case …. The negative effect of severing any bond or relationship that Mother and [Child] have is significantly outweighed by the positive outcomes of permanency for [Child].
>
> … Child needs the permanency, security and safety that adoption will provide more than [Child] needs any benefit [she] derives from an ongoing relationship with Mother.

Orphans' Court Opinion, 5/17/23, at 17-18.

The orphans' court did not abuse its discretion in considering Child's needs and welfare under Section 2511(b). As the court did not err, we affirm the order terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/27/2023