J-A29038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: G.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 775 WDA 2023 |

Appeal from the Order Entered June 1, 2023
In the Court of Common Pleas of Washington County
Orphans' Court at No. OC 63-22-1368

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  January 4, 2024**

R.M. (Father) appeals from the order granting the petition of the Washington County Office of Children & Youth (the Agency), and terminating Father's parental rights to G.M. (Child).[1]  We affirm.[2]

CASE HISTORY

Child was born in January 2021.  The orphans' court explained:

> While [the Agency had] previous contact and involvement with [Mother and Father (Parents)], the actions relevant to the present [termination] petition were initiated by the Agency when Mother gave birth to [Child] ….  At the time of [Child's] birth, Mother and [Child] tested positive for Buprenorphine, Amphetamines, Methamphetamines and Cocaine.

---

[1] The orphans' court also terminated the parental rights of A.S. (Mother). Mother's appeals are before this panel at 772 & 773 WDA 2023.

[2] We note with displeasure that neither Father's counsel nor Child's guardian *ad litem* appeared before this Court for oral argument.

On February 6, 2021, [Child] was discharged to the care of Mother and Father. Thereafter, the Agency attempted to contact Parents and access the home from February 6, 2021, through June 22, 2021. During this time, the Agency received additional information alleging parental substance abuse …. The Agency asserts that [it] attempted to make contact … nineteen (19) times through home visits, telephone calls and text messages. In addition, the Agency alleges that after a multitude of failed attempts to reach the family, the Agency hired a private investigator. The Agency further asserts that on June 21, 2021, they learned … [Child] had not been seen by a pediatrician since February 23, 2021 … and the family was non-compliant with services through Pressley Ridge and Southwestern Pennsylvania Human Services, Inc. (SPHS). On the same date, Mother and Father were determined to be in their home and refusing entry by police, [Agency] representatives, and SPHS housing representatives for several hours. As a result and in response to Parents' continued substance abuse, medical neglect of [Child], and lack of cooperation, the Agency sought and received a verbal shelter order.

A shelter hearing was held on June 25, 2021, and … the Hearing Officer [] ordered [Child] returned to the home …. The family was referred for services through Justice Works Youth Care (JWYC) and STOPP services were implemented on the same date.

[T]hrough July 1, 2021, the Agency made seven (7) unsuccessful attempts to "contact and engage" the Parents. On July 2, 2021, an adjudication hearing was held and [Child was] adjudicated dependent and removed from the home of Parents. The [court] found safety concerns in the home as a result of parents' continued refusal of services and grounded the finding of dependency on Child [] being without "proper care or control, subsistence, education, as required by law, or other care or control necessary for [his] physical, mental, or emotional health, or morals."

The Adjudication Order granted Mother and Father supervised visitation three (3) times a week for two (2) hours per visit and placed Child[] in Kinship Foster Placement.

\*\*\*

As to Father, the Order of Adjudication required Father:

- 2 -

- Complete a drug and alcohol assessment and follow all recommendations;

- Submit to random drug and alcohol testing a minimum of twice per month and at the discretion of the Agency;

- Complete a psychological and interactional evaluation, and follow treatment recommendations;

- Complete parenting education and follow all recommendations, including a curriculum involving substance abuse on parenting and protective capacity;

- Live a clean and sober lifestyle;

- Obtain and maintain sobriety; and

- Maintain safe and stable housing appropriate for reunification.

Orphans' Court Opinion, 8/4/23, at 2-4 (footnote omitted).

A permanency review hearing was scheduled for November 23, 2021, but postponed after Mother was injured in a car accident. *Id.* at 5. The dependency court held the review hearing on January 11, 2022. The court found Father had "minimal compliance and no progress with the [c]ourt-ordered permanency plan." *Id.* at 5. The court conducted another review hearing on May 17, 2022, when Father "was incarcerated, following a domestic violence incident with Mother[,] and [Father's] progress and compliance were found not applicable." *Id.* at 7.

The Agency's forensic psychologist, Dr. Neil Rosenblum, initially evaluated Father, Mother, and Child in August 2021. Dr. Rosenblum conducted a second evaluation in August 2022, which included Child's foster parents. Shortly thereafter, on September 8, 2022, the Agency petitioned to terminate Father's parental rights. A previously scheduled dependency review hearing was held five days later, on September 13, 2022, when Father "was deemed to have no compliance and no progress." Orphans' Court Opinion, 8/4/23, at 7.

### Termination Action

The orphans' court conducted four days of hearing on December 8, 2022, and January 11, January 25, and March 3, 2023. The court heard testimony from more than 10 witnesses, including Dr. Rosenblum; three Agency caseworkers; three family service providers; a police officer; Father; Mother; maternal grandmother; and Child's foster mother.

On June 1, 2023, the orphans' court terminated Father's parental rights. Father filed a timely notice of appeal and Pa.R.A.P. 1925 concise statement.

### ISSUES

Father presents four questions for our review:

1. Whether the trial court erred in terminating [Father's] parental rights?

2. Whether the trial court erred in not allowing Father's counsel the latitude to question Mother while taking her testimony?

3. Whether the trial court erred in not giving the appropriate weight to the fact that the [Agency] did not offer the appropriate

- 4 -

services necessary for reunification (domestic violence counseling)?

4. Whether the trial court erred in its analysis of the bond between [Father] and [C]hild pursuant to § 2511(b)?

Father's Brief at 2.[3]

DISCUSSION

We consider Father's issues mindful that this Court's review

is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and

---

[3] Although Father and Mother have appealed separately with separate counsel, they raise identical issues.

convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

Termination of parental rights is governed the Adoption Act, which provides for a bifurcated analysis. First, the orphans' court "must focus on the parent's conduct" relative to the "eleven enumerated grounds" for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). *Id.* at 830. If the court finds grounds for termination under Section 2511(a), it must assess the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Id.*

*Father's Argument*

Father describes his issues as "general," and states that three of his issues "pertain to § 2511(a), and one … pertains to § 2511(b)." Father's Brief at 10. Father's argument does not comply with Rule 2119(a), which requires the argument "be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point to be treated therein[.]" Pa.R.A.P. 2119(a); *see* Father's Brief at 16-25 (dividing argument into eight

distinctive alphabetical sections, A - H, in excess of the four numbered issues presented in his statement of questions). We address Father's issues as presented in his statement of questions.

1. *Whether the trial court erred in terminating [Father's] parental rights?*

This issue concerns Agency caseworker, Jennifer Mengle. Ms. Mengle testified at the first day of hearing, but did not complete her testimony. Father claims the orphans' court impermissibly shifted the burden to Parents to subpoena Ms. Mengle to complete her testimony. Father's Brief at 16.

Ms. Mengle was the family's caseworker. N.T., 12/8/22, at 61. She testified that Child was two years old. *Id.* at 63. Ms. Mengle stated that Child did not have "special medical conditions," although he "received occupational and physical therapy services … because he was walking on his toes." *Id.* Ms. Mengle confirmed that Child was adjudicated dependent on July 2, 2021, and placed in his current foster home in November 2021. *Id.* at 64-65. At this point, the orphans' court stopped Ms. Mengle's testimony because the court learned Ms. Mengle was not feeling well.[4] *Id.* at 65.

In January 2023, Ms. Mengle was no longer working at the Agency. The orphans' court later explained, "Inasmuch as Caseworker Jennifer Mengle was no longer employed with [the Agency], her Casework Manager[, Kristin

---

[4] The orphans' court stated, "I'm sorry. Unfortunately, a lot of people are feeling really ill today. She's not the only one." N.T., 12/8/22, at 66.

Young,] provided testimony for the Agency." Orphans' Court Opinion, 8/4/23, at 17.

Father argues,

[w]ithout Caseworker Mengle's testimony, the trial court was not able to give appropriate consideration and weight to Ms. Mengle's alleged bias against [Father] and any implications for reasonable efforts made (or not made) towards reunification.

Father's Brief at 18.

The record belies Father's argument. Our review reveals no error, particularly in the context of the record as a whole. The orphans' court held four days of hearing and heard testimony from numerous witnesses. In explaining its decision to terminate Father's parental rights, the orphans' court recounted each witness's testimony and concluded that the Agency presented clear and convincing evidence in support of termination. *See*, *e.g.*, Orphans' Court Opinion, 8/4/23, at 29-37 (finding grounds for termination under 23 Pa. C.S.A. § 2511(a)(1), (2), and (8)[5]); *see also id.* at 9-28 (detailing witness testimony).

The court specified:

Child has been out of care near[ly] his entire life, since five (5) months of age. During this time, the various needs of the Child[] were met by [] caregivers, not [Father]. … Father profess[es] taking extraordinary steps for Child, however the history of the compliance and progress of [Father] paints a different story. While at the time of the [termination] hearing, … Father [] completed a significant portion of services, by [his] own

_____

[5] We reiterate that this Court need only agree with the orphans' court as to any one subsection of Section 2511(a). *In re T.S.M.*, 71 A.3d at 267.

testimony, [he] waited until Child[ was] in placement for thirteen (13) months before initiating any [c]ourt-ordered services, most of which were initiated after the filing of the [termination petition] and after Child[] had spent significant time in care developing strong, consistent and reliable bonds with the Foster Family. While [Father] waited to participate in services, succumbed to barriers for completion, engaged in criminal activity and delayed steps to achieve positive mental health and sobriety, Child[ was] being cared for by others. … [A]t the time of the filing of the Petition for Termination of Parental Rights, it is unrefuted that [Father] failed to engage in the most essential [c]ourt-ordered services.

\*\*\*

… [Father's] participation occurred upon his release from incarceration and probation/parole. … Accordingly, in considering whether [] Father took every action necessary to maintain a place of importance in the life of [Child], this [c]ourt is of the opinion that [he] did not. … [T]his [c]ourt is also of the opinion that [Father] cannot remedy the conditions and causes of incapacity that have caused [Child] to be without parental care, control or subsistence necessary for [Child's] physical and mental wellbeing. [Father's] progress [has been] minimal. Dr. Rosenblum opined that [Father has] a long road ahead ….

*Id.* at 32-33.

The orphans' court did not shift the Agency's evidentiary burden. The orphans' court accurately referenced the Agency's evidence to support the court's finding of grounds for terminating Father's parental rights. We discern no error or abuse discretion regarding the court's consideration of Jennifer Mengle's testimony.

2.    *Whether the trial court erred in not allowing Father's counsel the latitude to question Mother while taking her testimony?*

Father argues the orphans' court impeded his counsel's cross-examination of Mother "without justification." Father's Brief at 19. Father

claims his counsel "was successfully bringing out in his line of questioning the fact that Mother had initiated services prior to the [termination] filing date of September 8, 2022." *Id.* This claim is baseless. Father cites no legal authority or otherwise explains how Mother's testimony about initiating services relates to termination of Father's parental rights. *See* Pa.R.A.P. 2119(a) (requiring that appellate argument include "discussion and citation of authorities as are deemed pertinent").

We have reviewed Mother's testimony on cross-examination by Father's counsel. *See* N.T., 1/25/23, at 219-26. Father's counsel initially questioned Mother about Father. *Id.* at 219-22. Mother described Father as "a great father" and "amazing." *Id.* at 220. Counsel's questioning continued:

> Q.     And you stated coping with addiction is a long-term process?
>
> A.     Yeah. It is. It is a long-term process. I mean if you want it –
>
> [Agency's Counsel]:     Your Honor, I'm going to object again to the line of questioning.[6] Again, [Father's counsel] is not representing Mother. I mean, **he's directing virtually all of his questions about Mother's services rather than his client**.
>
> [Father's Counsel]:     Can I ask what Rule of Evidence that says that I cannot ask Mother questions? Cite what Rule of Evidence that is.
>
> THE COURT:     Okay. So we are going over areas that we've gone over before –
>
> [Father's Counsel]:     It's a foundation –

---

[6] The Agency's counsel withdrew a prior objection. *See* N.T., 1/25/23, at 221.

THE COURT:            Pardon me?

[Father's Counsel]:     I didn't mean to interrupt you, Your Honor.  I'm sorry.  I'm trying to lay a foundation for further questions as well.

THE COURT:            Okay.  So let's move on at this point.

BY [Father's Counsel]:

Q.            So since [Father] has been incarcerated, has he been sober?

A.            Yes.

Q.            And has a caseworker ever met with you or [Father] to discuss the services that were ordered at the adjudication?

A.            No.

Q.            Do you know what a child permanency plan is?

A.            No.

Q.            And so the caseworker never set up [a] meeting to discuss that with you?

A.            No.

Q.            And you heard testimony in regard to the domestic violence, correct?

A .            Yes.

Q.            Has a caseworker ever presented that in a child permanency plan or any court order or recommended that service to you or [Father] during the pendency of this case?

[Children's Counsel]:   Objection.  Asked and answered many times throughout the course of this proceeding.

THE COURT: **I don't know that this witness was asked that question. So I'm going to overrule the objection and let her respond**.

THE WITNESS: No.

Q. But you and [Father] took it upon yourselves to engage in domestic violence counseling correct?

A. Yes, sir.

Q. And you believe [Father] should also be given a chance to parent [Child]?

A. Yes.

Q. And can you discuss how [Child] would be impacted if parental rights were terminated [and Child] is unable to see [Father]?

A. I think it would be a severe issue, … [Child] loves [Father] …

[Agency's Counsel]: I'm going to object, Your Honor. This is outside the scope of this witness's ability to speculate as to what kind of conditions this may cause or issues this may cause a child.

THE COURT: Objection sustained.

[Father's Counsel]: Thank you, [Mother], that's all the questions I have.

*Id.* at 223-26 (footnote and emphasis added).

As indicated above, the record refutes Father's claim that the orphans' court improperly limited his counsel's cross-examination of Mother. Thus, the issue does not merit relief.

3.      *Whether the trial court erred in not giving the appropriate weight to the fact that the [Agency] did not offer the appropriate services necessary for reunification (domestic violence counseling)?*

Father continues to include Mother in his advocacy, arguing that the orphans' court "did not consider the fact that the Agency failed in providing **the [P]arents** reasonable efforts to reunify."  Father's Brief at 19 (emphasis added).  Father stresses, "the Agency did not recommend or offer Mother nor Father domestic violence counseling, the Agency's forensic psychologist[, Dr. Rosenblum,] did not recommend same, nor was Mother or Father ever court-ordered to engage in same."  *Id.* at 20.  According to Father, the "lapse in providing domestic violence counseling raises the issue of whether the Agency provided services necessary for reunification and the reasonableness of its efforts."  *Id.*  Father's argument is not persuasive.

It is the responsibility of the orphans' court, as fact-finder, to "assign the evidence the appropriate weight to which it is entitled in reaching its factual and legal conclusions."  *Int. of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021).  Here, the orphans' court noted "concerns about domestic violence were discussed" at the January 11, 2022, review hearing.  Orphans' Court Opinion, 8/4/23, at 6 (stating that service provider's report "indicat[ed] Mother had shown [the provider] bruises reportedly caused by Father.").  However, the dependency court did not add domestic violence counseling to the family service plan.  *Id.* (citing Permanency Review Order, 1/11/22).

Approximately three months later, in April 2022, police were called to a "domestic disturbance involving" Father and Mother. Orphans' Court Opinion, 8/4/23, at 14. As a result of the incident, Father was incarcerated during the May 2022 review hearing. The orphans' court stated that Father "declined visitation … at this review hearing because of his incarceration, although he requested resumption of visitation upon his release. Services for [Father] remained the same at the hearing." *Id.* at 7. Father remained incarcerated at the time of the September 13, 2022 review hearing, and "was deemed to have no compliance and no progress." *Id.* On November 2, 2022, Father was released from jail; he participated in an evaluation with Dr. Rosenblum on November 15, 2022. *Id.* at 11. In finding grounds for terminating Father's parental rights, the orphans' court relied, *inter alia*, on Dr. Rosenblum's testimony. *See*, *e.g.*, *id.* at 33.

Dr. Rosenblum initially evaluated Father on August 26, 2021. Dr. Rosenblum testified:

> In August of 2021, I diagnosed [Father] with an adjustment disorder with disturbance of emotions and conduct, cannabis use disorder, antisocial personality traits, history of adult antisocial behavior, relationship distress with spouse or intimate partner, and parent/child relational problems.

N.T., 12/8/22, at 25. Dr. Rosenblum "recommended both outpatient mental health treatment and outpatient drug and alcohol treatment." *Id.* at 26.

After evaluating Father again on November 15, 2022, Dr. Rosenblum concluded:

There was the same minimization of any difficulties with poor judgment, impulse control, conflict with others, or antisocial behavior. ...

… I would say [Father's] insight into his problems is minimal. And I think that's a major issue[, that Father has] not only a history of impulse control and some substance abuse problems, but, again, the denial that [his problems have] really impacted him or affected [Child].

*Id.* at 28.

Dr. Rosenblum explained that Father "very much knew that he was facing a possibility of a termination of parental rights proceeding and certainly doesn't want to lose [Child] …. But there is a lack of genuineness in acknowledging and addressing [his] problems." *Id.* at 29.

The orphans' court subsequently observed that Father "failed to engage in the most essential [c]ourt-ordered services." Orphans' Court Opinion, 8/4/23, at 33. Referencing Dr. Rosenblum's testimony, the orphans' court found Father's

repeated and continued incapacity, neglect and/or refusal to provide proper parental control for [Child,] … has caused [Child] to be without essential parental care, control or subsistence necessary for [Child's] physical or mental wellbeing. This [c]ourt also finds clear and convincing evidence that the conditions and causes of incapacity, neglect and/or refusal will not be remedied by [Father].

*Id.* at 34 (finding "sufficient grounds for termination under 23 Pa. C.S.A. § 2511(a)(2).").

On this record, we discern no error in the weight the orphans' court gave to the evidence that the dependency court and Agency did not recommend or offer domestic violence counseling. ***Int. of S.K.L.R.***, 256 A.3d at 1124.

4. *Whether the trial court erred in its analysis of the bond between [Father] and [C]hild pursuant to § 2511(b)?*

Father challenges termination under 23 Pa.C.S.A. § 2511(b). When the court finds grounds for termination under Section 2511(a), it must separately consider Child's needs and welfare:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. ...

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***In the Interest of K.T.***, 296 A.3d 1085, 1105 (Pa. 2023). Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted). However,

> the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

> Importantly, **the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship**.

***In re A.H.***, 247 A.3d 439, 444–45 (Pa. Super. 2021) (citations omitted, emphasis added).

- 16 -

Our Supreme Court recently affirmed that "the parental bond is but one part of the overall subsection (b) analysis." **K.T.**, 296 A.3d at 1113. Courts must also consider factors such as: (1) the child's need for permanency and length of time in foster care; (2) whether the child is in a pre-adoptive home and bonded with foster parents; and (3) whether the foster home meets the child's needs. **Id.** It bears repeating that "intangibles such as love, comfort, security, and stability" are relevant to a child's needs and welfare. **Id.** at 1096, 1098, 1106, 1109, 1111 (citations omitted).

Father contends the orphans' court erred in its bond analysis. Father claims

> there does not appear to be sufficient evidence as it concerns the impact on [C]hild[] of severing said bond to allow for a trial court to properly make a determination under the statute.
>
> In the instant matter, the trial court erred … by not undertaking an evaluation of the nature of the parental bond … [and] … not explicitly considering severance of same.
>
> The trial court appears even to deny the existence of such a bond, which is inconsistent with the record. **See infra**. Rather, for [Child], the court focuses on the *quantity* of benefits the parents provide for the developmental, physical, and emotional needs of [Child] relative to *quantity* provided by the foster parents who have daily physical care and control of [Child].

Father's Brief at 28-29 (italics in original).

We disagree. The orphans' court considered Child's needs and welfare, and found that termination was in Child's best interests. The orphans' court explained:

With regard to [Child], who was only five (5) months old at the time he came into care, this [c]ourt's evaluation under § 2511 (b) is clear. [Child] has lived with his Foster Parents nearly his entire life. All of [his] physical, medical, mental, educational and emotional needs are cared for by the Foster Parents. Father [] put forth no evidence supporting maintenance of his relationship with [Child,] but rather championed for Mother to retain her parental rights. … Accordingly, this [c]ourt finds the Child's best interest and welfare [is] served by achieving permanency through adoption and consequentially finds clear and convincing evidence to terminate the parental rights of [Father] ….

Orphans' Court Opinion, 8/4/23, at 38-39.

The orphans' court's reasoning is supported by the evidence and the law. *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) (stating that dependent children's lives "cannot be held in abeyance").

For the above reasons, we affirm the termination of Father's parental rights.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/4/2024