J-S17032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 339 EDA 2024 |

Appeal from the Order Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000067-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 340 EDA 2024 |

Appeal from the Order Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000239-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 367 EDA 2024 |

Appeal from the Decree Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000566-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S17032-24

APPEAL OF: S.S., MOTHER

:      No. 368 EDA 2024

Appeal from the Decree Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000567-2022

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:      **FILED JUNE 24, 2024**

S.S. (Mother) appeals from the decrees involuntarily terminating her parental rights to her two sons, M.J., a/k/a M.D.J, and D.J., a/k/a D.M.J. (Children).[1] Mother also appeals from the orders changing Children's permanency goal to adoption. We affirm.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

M.J. was born in August 2017, and D.J. was born in January 2020. The Philadelphia Department of Human Services (DHS) became involved with the family the day after D.J. was born, when both D.J. and Mother tested positive for Subutex, Klonopin, cocaine and marijuana. N.T., 12/4/23, at 14.

While D.J. remained in the hospital, DHS sought emergency protective care of M.J. The trial court granted DHS emergency protective custody of M.J. on January 17, 2020. M.J. was placed in kinship care with Children's adult

---

[1] Children's father voluntarily relinquished his parental rights. N.T., 12/4/23, at 12-13, 51.

- 2 -

brother, J.J., and J.J.'s wife, R.J. (Foster Parents). *Id.* at 42. On January 28, 2020, the trial court adjudicated M.J. dependent.

On February 21, 2020, the trial court granted DHS emergency protective custody of D.J. D.J. was discharged from the hospital and placed in kinship care with M.J. and Foster Parents. The trial court adjudicated D.J. dependent on March 2, 2020. Children have resided with Foster Parents since their placement in 2020. *Id.* Foster parents are a pre-adoptive resource. *Id.* at 43.

At the inception of the case, the trial court ordered Mother to obtain a dual-diagnosis assessment, complete drug and alcohol screens and treatment, and attend supervised visits with Children. The court also ordered Mother to participate in parenting, domestic violence, housing, and employment services as recommended by the Achieving Reunification Center (ARC).

After a permanency review hearing in March 2021, the court found Mother was in "minimal compliance with [her] permanency plan." Order, 3/12/21. The court noted Mother "made only 2 visits [with Children] since the last court date[, and] Mother appears at the visits under the influence." *Id.* The court continued to order that Mother, *inter alia*, obtain a "full drug and alcohol screen, dual diagnosis assessment, and 3 random [drug screens] prior to [the] next court date." *Id.*

After a review hearing in June 2021, the trial court again ordered Mother to obtain "a dual diagnosis assessment and forthwith screen plus 3 random screens." Order, 6/21/21. The court also "referred [Mother] to ARC for

- 3 -

appropriate services[, with] Mother to provide an updated treatment plan and progress notes." ***Id.***

After a review hearing in November 2021, the trial court found Mother had made "minimal progress toward alleviating the circumstances which necessitated [Children's] original placement." Order, 11/1/21. The court ordered that Mother be "re-referred to ARC for appropriate services." ***Id.***

At hearings in May and July 2022, the trial court found "no compliance with [Mother's] permanency plan," and "no progress toward alleviating the circumstances which necessitated the original placement." Order, 5/13/22; Order, 7/29/22.

On October 14, 2022, DHS petitioned to terminate Mother's parental rights and change Children's permanency goal to adoption. The trial court held hearings on December 4, 2023, and January 5, 2024. Mother had notice of the first hearing, but did not appear because she was incarcerated in Bucks County.[2] N.T., 12/4/23, at 6, 44.

DHS presented testimony from the Community Umbrella Agency (CUA)[3] case manager, Beverly Jackson. Ms. Jackson confirmed that when the case

---

[2] Mother's counsel learned that Mother was incarcerated shortly before the hearing. N.T., 12/4/23, at 6. The trial court bifurcated the hearing after determining that Mother could not testify remotely from Bucks County. ***Id.*** at 10-12. The court "left the record open for Mother's Counsel to present additional evidence at the next hearing should his client be released from custody." Notice of Compliance with Rule of Appellate Procedure 1925(a), 2/6/24, at 1-2 (unnumbered).

[3] CUA works with DHS to provide services.

began in 2020, Mother was given Single Case Plan (SCP) objectives of participating in drug and alcohol and mental health assessments and treatment, attending supervised visits with Children, and obtaining suitable housing and employment. N.T., 12/4/23, at 15. Ms. Jackson stated that Mother has had these same objectives "throughout the life of the case." ***Id.*** at 39. She specifically confirmed that Mother had not progressed with alleviating the circumstances that brought Children into care. ***Id.*** at 40.

Ms. Jackson described Mother's relationship with Children as "friendly," but opined that Children do not view Mother as their parent. ***Id.*** at 50. According to Ms. Jackson, termination of Mother's parental rights would not have a negative effect on Children. ***Id.*** at 51.

Ms. Jackson has visited Children in their home with Foster Parents on a monthly basis. ***Id.*** at 59. She testified that Children are "very bonded" with Foster Parents, who provide for all of Children's needs. ***Id.*** at 43, 51. Children refer to Foster Parents as "Mom" and "Dad." ***Id.*** at 51. Ms. Jackson described the home as providing "consistency," and being both "fun" and "safe." ***Id.*** at 42.

Mother did not appear at the second hearing, and her counsel stated that he had "no evidence" to present. N.T., 1/5/24, at 8. Counsel also stated that Mother had "been released from prison[, but] I haven't had any contact with her." ***Id.***

DHS recalled Ms. Jackson, who relayed that Mother had not visited Children in the month between hearings. ***Id.*** at 7. Ms. Jackson conducted a

home visit with Children on December 13, 2023. *Id.* at 6. She repeated that Foster Parents are Children's "primary caretakers," who Children "look to" for meeting their daily needs. *Id.*

> Children's legal counsel, Attorney Carla Beggin, stated:
>
> I spoke with both [C]hildren. They are very happy where they are.
>
> They do want it to be a forever home. And they basically, in a rough way, understand the concept of the adoption. But they believe that [Foster Parents] are Mom and Dad.

*Id.* at 8.

> In advocating for termination, DHS's counsel argued:
>
> The conditions which led to the removal and placement of both [C]hildren continue to exist. [C]hildren have been in care for an extended amount of time.
>
> [Mother has] failed to remedy the conditions [that resulted in Children's placement] by [not] completing [her] single case plan objectives and visiting with [C]hildren. …
>
> … The testimony was also that, under 2511(b), that there is no parent/child bond … between [C]hildren and … Mother.
>
> [C]hildren are well bonded with [Foster Parents]. They look to them as their primary caregivers for all their basic needs and everything that they would want. [Foster Parents] take care of [Children's] medical and educational needs.
>
> [Foster Parents are] who [C]hildren look to for love, support, care, and comfort. And [it is DHS's] belief that [Children] would suffer irreparable harm if they were removed from [Foster P]arents at this time. [DHS] would ask for the parental rights [of Mother] be terminated because it would be in [C]hildren's best interest[, and DHS asks that] their goals … be changed to adoption at this time.

*Id.* at 9-10.

> Children's guardian *ad litem* (GAL), Attorney Pierre Simonval, added:

I'm in agreement with the recommendations of [DHS]. I'm also in agreement that [C]hildren would suffer irreparable harm if they were removed from their current placement.

I've observed [C]hildren in placement. They're extremely bonded with [Foster P]arents. And I believe, unfortunately, Mother has not presented enough to show a bond, a parent/child bond, or that she's prepared to act [or] provide care for [C]hildren.

I believe it's in [C]hildren's best interests to be … adopt[ed] so they can remain in the home [with Foster Parents].

*Id.* at 10-11. Children's legal counsel expressed her agreement with DHS and the GAL. *Id.* at 11.

Mother's counsel argued against termination, stating that Mother had "completed some services and classes," and "was compliant with her mental health treatment, which is always an ongoing component in a case like this." *Id.* Mother's counsel also stated that "even though she didn't complete any drug and alcohol treatment," Mother had "a drug prescription in the past for [benzodiazepines]." *Id.*

The trial court announced its decision to change Children's permanency goal to adoption, and terminate Mother's parental rights pursuant to Section 2511(a)(1),(2),(5),(8), and (b). *Id.* at 12. On January 5, 2024, the trial court entered the respective orders and decrees.

Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) at each docket.[4] Rather than author an opinion, the trial court issued an order giving notice

_____

[4] On February 20, 2024, this Court consolidated the appeals *sua sponte*.

that it "stated on the record the reasons for its entry of the [decrees] involuntarily terminating Mother's parental rights." Notice of Compliance with Pa.R.A.P. 1925(a), 2/6/24, at 1 (unnumbered).

### ISSUES

Mother presents the following questions for review:

1. Did the [t]rial [court] rule in error that [DHS] meant [*sic*] its burden of pro[ving] that Mother's parental rights to h[er] children be terminated[?]

2. Did the trial [court] rule in error that [] terminating Mother's rights would best serve the needs and welfare of [C]hildren[?]

3. Did the trial [court] rule in error that the goal be change[d] to adoption[?]

Mother's Brief at 7.

### ANALYSIS

We initially recognize that in "cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." *Interest of M.E.*, 283 A.3d 820, 829 (Pa. Super. 2022) (citation omitted). An appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Id.* When the trial court's findings are supported by the evidence, an appellate court may not disturb the ruling "unless it has discerned an error of law or abuse of discretion." *Id.* This standard of review reflects our deference to trial courts. *Id.* at 830.

The Adoption Act is the statutory authority for termination of parental rights and provides for a bifurcated analysis. ***See*** 23 Pa.C.S. §§ 2511-2514. First, the trial court must focus on the parent's conduct and "the eleven enumerated grounds" for termination in 23 Pa.C.S. § 2511(a). ***Interest of M.E.***, 283 A.3d at 830. If the court finds grounds for termination under Section 2511(a), it must then assess the children's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). This Court "need only agree with [the] decision as to any one subsection of [Section 2511(a), in addition to Section 2511(b),] to affirm the termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

### 1. Grounds for Termination

In her first issue, Mother argues that DHS did not meet its burden of proving grounds for termination under Section 2511(a). Mother's Brief at 9-10. As the petitioner, DHS must prove by clear and convincing evidence that its asserted grounds for termination are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). The trial court is free to believe all, part, or none of the evidence, make credibility determinations, and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The trial court terminated Mother's parental rights under Section 2511(a)(1), (2), (5), and (8). As this Court "need only agree with … any one

subsection," **B.L.W.**, **supra**, we examine the trial court's finding of grounds for termination under subsection 2511(a)(1).

A parent's rights may be terminated when:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused **or failed to perform parental duties**.

23 Pa.C.S. § 2511(a)(1) (emphasis added).

Mother claims DHS did not prove grounds for termination because "Mother was engaged in her goals and was not relinquishing a claim or fail[ing] to perform parental duties." Mother's Brief at 10. According to Mother, "she was compliant with her mental health treatment," but was unable "to participate in the drug and alcohol program" because "Mother had a valid prescription for the [d]rugs she was testing positive for on the drug screens." **Id.** at 12. Mother also states she was "remedying the drug and alcohol issue" and "maintaining the bond with [C]hildren." **Id.** at 13. She references a "housing assessment" she completed on October 9, 2020, and a "financial education class" she completed on October 8, 2022. **Id.** at 10-11. Mother concedes she "did not have housing or employment," but states that "she was remedying the situation and was trying to make improvements in housing." **Id.** at 11. Mother's argument lacks merit.

As DHS explains:

By March of 2021, Mother's level of compliance with the permanency plan had deteriorated to minimal, she was not making progress towards reunification, and … was appearing for visits with [C]hildren while under the influence of a controlled

- 10 -

substance. (LRD Nos. 34, 29, 26, Permanency Review Order and Exhibits dated 3/12/21, 11/21/21, 5/13/21).

Considering that Mother's minimal level of compliance and lack of progress persisted, on October 22, 2022, or *thirty-four (34) months* after M.J. came into care, DHS petitioned the trial court to terminate her parental rights and change [C]hildren's goals to adoption. On this record[,] … the trial court correctly found that Mother failed to perform parental duties and terminated her parental rights to M.J. and D.J.

DHS's Brief at 19-20 (citing ***In re Julissa O.***, 746 A.2d 1137, 1141 (Pa. Super. 2000) (recognizing a parent's "affirmative duty to work toward the children's return")).

As discussed above, the record supports the trial court's finding that Mother failed to perform parental duties "for a period of at least six months immediately preceding the filing of the [October 22, 2022] petition." 23 Pa.C.S. § 2511(a)(1). The trial court concluded that Mother "failed to alleviate [Children's] need for placement." N.T., 1/5/24, at 12. The trial court explained:

The record reflects that [C]hildren have been in care an inordinate amount of time. Since placement, single case plan objectives were established for reunification.

While Mother has complied with some of her single case plan objectives, she has never been fully compliant with single case plan objectives, nor has she visited [Children] on a regular basis.

N.T., 1/5/24, at 11-12.

There is ample support for the finding that Mother failed to perform parental duties for at least six months preceding the filing of the termination

petition. Accordingly, the trial court did not err or abuse its discretion in terminating Mother's parental rights under subsection 2511(a)(1).

*2. Children's Needs and Welfare*

In her second issue, Mother repeatedly states that "[i]t would not serve the best interest of [C]hildren to terminate Mother's rights[.] [C]hildren enjoyed their visits with [M]other." Mother's Brief at 27-28. She also repeats that she "was maintaining a bond with [C]hildren." *Id.* Mother does not develop her argument beyond these statements and citation to boilerplate case law. *Id.*

In response, DHS asserts:

> Based on th[e] record, the trial court correctly concluded that the termination of Mother's parental rights would not cause [C]hildren to suffer irreparable harm and that their developmental, physical, and emotional needs and welfare were best served by termination of her parental rights and being freed for adoption by their kinship provider.

DHS's Brief at 27. We agree.

In terminating the rights of a parent under Section 2511(b), the trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023). Courts must also "discern the nature and status of the parent-child bond, with

utmost attention to the effect on the child of permanently severing that bond."

*Id.* (citation omitted). However,

> the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. Importantly, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship.

*In re Adoption of A.H.*, 247 A.3d 439, 445 (Pa. Super. 2021) (citations omitted). The parental bond "is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *K.T.*, 296 A.3d at 1113.

Ms. Jackson's testimony supports the trial court's finding that termination served Children's needs and welfare. Ms. Jackson testified that Mother's "visits [with Children] never progressed to more than supervised." N.T., 12/4/23, at 63. She relayed that M.J. was six years old and had been in care "for almost four years." *Id.* at 35. She stated that M.J. could be "standoffish" and "kind of reluctant" during visits with Mother. *Id.* at 36. Ms. Jackson also opined that M.J. would not suffer irreparable harm from termination. *Id.* at 37. She explained: "I don't think [M.J. is] bonded to [Mother]." *Id.* at 39.

Regarding D.J., Ms. Jackson confirmed that he was four years old and had resided with Foster Parents since he was an infant. *Id.* at 38. She described D.J. as "more easygoing," although "he goes where his brother

goes. He follows his big brother." ***Id.*** Ms. Jackson also opined that D.J. would not be harmed by termination of Mother's rights. ***Id.*** at 39. To the contrary, she testified that both Children would suffer if they were removed from their home with Foster Parents. ***Id.*** at 41. Ms. Jackson stated:

> [Children] have been in this position for almost four years. I think that they deserve to be in a place where there is going to be consistency. …
>
> [T]hey enjoy the home they're in. They have a lot of things there to help them learn and grow…. They have a stable home. And so I think it would be good for them to be adopted by [Foster Parents].

***Id.*** at 40-41. Ms. Jackson reiterated her belief that adoption is in Children's best interests. ***Id.*** at 44.

> The trial court subsequently concluded:
>
> [C]hildren are extremely bonded with [Foster Parents], and they do not have a parent/child bond with [Mother]. …
>
> These [C]hildren deserve permanency. And I find that it is in their best interest for the goal to be changed to adoption and the parental rights of [Mother] … to be involuntarily terminated under … [Section] 2511 (b).

N.T., 1/5/24, at 12.

As the record supports this conclusion, the trial court did not err or abuse its discretion in terminating Mother's parental rights under Section 2511(b).

### *3. Goal Change to Adoption*

In her third issue, Mother challenges the trial court's decision to change Children's permanency goal to adoption. However, Mother fails to address the goal change, factually or legally, in her argument. ***See*** Mother's Brief at 7

(Statement of Questions Involved); *id.* at 29-30 (third section of the argument in which Mother does not mention goal change).

We have stated repeatedly that "it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record, and with citations to legal authorities." *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) (citation omitted). "Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.* This issue is waived because Mother has failed to present a cogent argument.

Nonetheless, we note the issue would be moot because the trial court did not abuse its discretion in terminating Mother's parental rights. *Interest of A.R.*, 311 A.3d 1105, 1114 (Pa. Super. 2023) (quoting *In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021) ("The effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption.")).

For the above reasons, we affirm the termination of Mother's parental rights and the change in Children's permanency goal to adoption.

Decrees and orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2024