J-S25031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | No. 1059 EDA 2024 |

Appeal from the Order Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001204-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | No. 1060 EDA 2024 |

Appeal from the Decree Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000014-2023

BEFORE: DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED JULY 29, 2024**

J.M. ("Mother") appeals from the decree and order entered by the

Philadelphia County Court of Common Pleas ("orphans' court") terminating

her parental rights to K.C.,[1] born April 2016, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and the order changing K.C.'s permanency goal to adoption. Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights, we affirm.

The Philadelphia Department of Human Services ("DHS") became involved with Mother and K.C. in November 2020 when DHS received a General Protective Services report that K.C. and Mother did not have stable housing, K.C. had not received necessary medical care, and Mother and K.C.'s father[2] were abusing drugs and had untreated mental health issues. N.T., 3/25/2024, at 4-5. On November 13, 2020, DHS obtained an order of protective custody that placed K.C. in the care of her maternal aunt. *See* Shelter Care Order, 11/13/2020. On February 16, 2021, K.C. was adjudicated dependent with the primary permanency goal of reunification. *See* Order of Adjudication and Disposition, 2/16/2021. Mother's single case plan ("SCP") objectives were to attend parenting classes, undergo regular drug screening, attend supervised visits with K.C., obtain stable housing and steady employment, and attend drug and alcohol and mental health treatment programs. N.T., 3/25/2024, at 6.

_____

[1] K.C. and K.C.C. are the same child. This is a consolidated appeal from the order changing K.C.'s permanency goal to adoption and from the decree terminating Mother's parental rights. For ease of review, we will refer to the child only as K.C.

[2] K.C.'s father is now deceased.

Throughout the case, the dependency court found Mother's compliance with her SCP objectives and progress towards eliminating the circumstances that led to K.C.'s placement in foster care to be moderate to minimal. *See, e.g.*, Permanency Review Order, 4/20/2023; Permanency Review Order, 9/29/2022; Permanency Review Order, 4/7/2022; Permanency Review Order, 10/14/2021. Mother was non-compliant with drug and alcohol treatment programs, struggled to obtain housing and employment, and had little to no visitation with K.C. *See* Permanency Review Order, 4/20/2023; Permanency Review Order, 9/29/2022; Permanency Review Order, 4/7/2022; Permanency Review Order, 10/14/2021; *see also* N.T., 3/25/2024, at 14. Notably, on August 11, 2021, October 14, 2021, January 14, 2022, and August 7, 2023, Mother underwent drug screens, all of which returned positive results for amphetamines. N.T., 3/25/2024, at 12, DHS Exhibit 1. In April 2023, because of ongoing personal issues between maternal aunt and Mother, K.C. was placed in the care of Mother's best friend, W.M. *See* Permanency Review Order, 4/20/2023; *see also* N.T., 3/25/2024, at 55.

On October 4, 2023, DHS filed a petition to involuntarily terminate Mother's parental rights and to change K.C.'s permanency goal to adoption. The orphans' court held a hearing on the petition on March 25, 2024. The same day, the orphans' court issued a decree involuntarily terminating Mother's parental rights to K.C. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and finding, pursuant to 23 Pa.C.S. § 2511(b), that termination best

served the developmental, physical, and emotional needs and welfare of K.C.,

and entered an order changing K.C.'s permanency goal to adoption.

Mother timely appealed to this Court and complied with Pennsylvania

Rule of Appellate Procedure 1925. Mother presents the following issues for

review:

1. Did the [orphans' court] rule in error that [DHS met] its burden
   of proof that Mother's parental rights to [K.C.] be terminated[?]

2. Did the [orphans' court] rule in error that … terminating
   Mother's rights would best serve the needs and welfare of
   [K.C.?]

3. Did the [dependency court] rule in error that the goal be
   change[d] to adoption[?]

Mother's Brief at 4.

In her first two claims, Mother challenges the termination of her parental

rights. In reviewing an appeal from a decree terminating parental rights, we

adhere to the following standard:

In cases concerning the involuntary termination of parental rights,
appellate review is limited to a determination of whether the
decree of the termination court is supported by competent
evidence. This standard of review corresponds to the standard
employed in dependency cases, and requires appellate courts to
accept the findings of fact and credibility determinations of the
[orphans'] court if they are supported by the record, but it does
not require the appellate court to accept the lower court's
inferences or conclusions of law. That is, if the factual findings
are supported, we must determine whether the [orphans'] court
made an error of law or abused its discretion. An abuse of
discretion does not result merely because the reviewing court
might have reached a different conclusion; we reverse for an
abuse of discretion only upon demonstration of manifest
unreasonableness, partiality, prejudice, bias, or ill will. Thus,
absent an abuse of discretion, an error of law, or insufficient

evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Mother's rights to K.C. pursuant to subsections (1), (2), (5), and (8) of section 2511(a). Orphans'

Court Opinion, 2/7/2024, at 8. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(8).

Mother argues that the orphans' court abused its discretion by terminating her parental rights pursuant to section 2511(a)(8) on the basis that she failed to comply with several of her SCP objectives. Mother's Brief at 14-16. Mother asserts that she has remedied the issues that led to K.C.'s removal from her care, namely her issues with substance abuse. *Id.* at 15. Mother points to evidence indicating that she recently completed an inpatient drug rehabilitation program, that she was continuing her drug rehabilitation in an outpatient program, and her recent drugs screens had returned negative results. *Id.* at 16.

To terminate parental rights under section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008); *see also* 23 Pa.C.S. § 2511(a)(8).[3] Notably, this subsection "does not

_____

[3] Although separately enumerated, this Court has interpreted the needs and welfare analyses required under subsections (a)(8) and (b) to utilize the same legal standards and to be based upon the same evidence. *See Matter of*
*(Footnote Continued Next Page)*

require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children." ***Interest of M.E.***, 283 A.3d 820, 832 (Pa. Super. 2022). Rather, "the relevant inquiry regarding the second prong of [section] 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***Id.*** (quotation marks and brackets omitted). Further, "[w]ith respect to any petition filed pursuant to subsection [(a)(8)], the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b); ***see also T.S.M.***, 71 A.3d at 255 n.8.

The orphans' court provided the following explanation for its decision to terminate Mother's parental rights under section 2511(a)(8):

> [K.C.] has been in care an inordinate amount of time. The record reflects that she was placed pursuant to an order of protective custody back in November 2020. Single case plan objectives were established for reunification. They included [parenting classes], parenting visitation, addressing substance [ab]use treatment, as well as mental health treatment and housing. …
>
> The compliance for [Mother] has been minimal, as well as the progress has been minimal. Visits have never surpassed supervised at the agency, and she has minimally taken advantage

_____

***Adoption of M.A.B.***, 166 A.3d 434, 448 (Pa. Super. 2017) (combining discussion of the children's needs and welfare pursuant to subsection (a)(8) and subsection (b) because the "third element of [s]ection 2511(a)(8) requires that the [o]rphans' [c]ourt conduct an analysis similar to that required under [s]ection 2511(b)").

of that. The testimony reflects that the last visit was virtual, January 2 of 2024, while mom was in [inpatient mental health] treatment at the Pyramid, and she's begun [drug and alcohol treatment] as of February of this year.

She's had some phone contact, but unfortunately has not visited her daughter consistently, and has not visited in person since she's been placed in the current resource home.

\* \* \*

Circumstances that necessitated placement still exist. [K.C.] deserves permanency. She needs stability. It does not appear that [Mother] will be able to meet her needs in any reasonable amount of time. She should have permanency, as opposed to remaining in foster care indefinitely[.]

N.T., 3/25/2024, at 68-70.

Our review of the record supports the orphans' court's conclusions. The record reflects, and Mother does not dispute, that K.C. has been in care for more than forty months. *Id.* at 4. K.C. was removed from Mother's care because K.C. did not have stable housing, K.C. had not received necessary medical care, Mother was abusing drugs, and Mother had untreated mental health issues. N.T., 3/25/2024, at 4-5. Mother's SCP objectives were to attend parenting classes, undergo successful regular drug screening, attend supervised visits with K.C., obtain employment and housing suitable for K.C., and attend drug and alcohol and mental health treatment programs. *Id.* at 6.

The Community Umbrella Agency Case Manager, Beverly Jackson ("Jackson") testified that Mother's compliance with her SCP objectives was "minimal." *Id.* at 15. Although the record supports Mother's contention that

she completed an inpatient mental health and drug rehabilitation program and that she is presently enrolled in an outpatient program, she did not avail herself of any of these programs until after DHS filed its termination petition, and therefore cannot be considered. *Id.* at 44-48, 59-61; *see also* 23 Pa.C.S. § 2511(b). Moreover, Mother continued to test positive for amphetamines over the course of the several years following K.C.'s removal from her care. *Id.*, DHS Exhibit 1.

Additionally, the record further reveals that Mother was unable to rectify her issues with employment and housing. While Mother claims she is currently employed, she was unable to provide verification of her employment at the termination hearing. *Id.* at 7-8. Likewise, Jackson testified that Mother had not remedied her housing issues, as she was either living with a family friend or her boyfriend in the months preceding the termination hearing. *Id.* at 25-26, 52. Finally, the record reflects that Mother had very little contact with K.C. while K.C. was not in her care. *Id.* at 14-15. Thus, the record supports a finding that Mother largely has not addressed, let alone remedied, the concerns that resulted in K.C.'s removal from her care.

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to the third prong of section 2511(a)(8) and section 2511(b). Mother argues that the orphans' court erred in this regard because termination would not serve the best interests of K.C. Mother's Brief at 16-17. In support

of this claim, Mother asserts that a bond still exists between herself and K.C. because she maintains phone contact with K.C. and often calls K.C. when she visits her grandfather. *Id.* at 17.

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted).

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible

needs of love, comfort, security, safety, and stability." ***Id.*** (citations omitted).

"These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." ***Id.*** Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." ***Id.***

With respect to its needs and welfare analysis, the orphans' court explained:

> The testimony reflects that while [K.C.] is happy to see her mom and have contact with her mom, the testimony reflects, in terms of any bond, and I quote, the CUA case manager observed, "Somewhat of a bond," but she did not observe a mother-daughter bond; "It's more like girlfriends."
>
> [K.C.] is currently thriving in the current resource parent's home. She's made a great deal of progress[.] The developmental, physical, and emotional needs and welfare are being met by her resource [parent]. She's providing her love, comfort, security, as well as stability.
>
> I find that termination of parental rights would not destroy an existing necessary, beneficial relationship with her mom. She would not suffer irreparable harm if the parental rights of [Mother] are terminated.

N.T., 3/25/2024, at 69-70.

The record reflects that K.C., who has been in the care of W.M. for the last year, is thriving in her current pre-adoptive home. N.T., 3/25/2024, at 18. Initially, after K.C. was removed from Mother's care, she presented several behavioral and mental health issues, including acting out in school and inappropriate sexual behavior with a cousin. ***Id.*** Presently, Jackson testified

that K.C. has undergone treatment for the inappropriate sexual behavior, she no longer acts out in school, she is able to have and maintain healthy conversations with others, and she is on her school's honor roll. *Id.* Jackson further testified that K.C. looks to W.M. for her physical, emotional, and educational needs. *Id.* at 22. In contrast, Jackson testified that K.C. does not have a parental bond with Mother, and that K.C.'s relationship with Mother was that of "girlfriends" as opposed to parent-child, and that K.C. would not be irreparably harmed if Mother's parental rights were terminated. *Id.* at 16, 38. Lastly, Mother concedes that K.C. has been doing well in W.M.'s care and she does not wish to remove her from that living situation. *Id.* at 52.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that K.C. is bonded to W.M., that she best meets K.C.'s needs and welfare, and that K.C. will not be irreparably harmed by terminating Mother's parental rights. Accordingly, we conclude that the orphans' court did not err in determining that K.C.'s developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. As the orphans' court's determination pursuant to section 2511(a)(8) and (b) is supported by the record, we must affirm the decree terminating Mother's parental rights to K.C. *See C.M.*, 255 A.3d at 358-59.

Lastly, Mother challenges the decision to change K.C.'s permanency goal from reunification to adoption. Mother's Brief at 18-19. Our decision to affirm

the orphans' court's termination decree, however, necessarily renders moot the decision to change K.C. permanency goal to adoption. *In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021). On this basis, we likewise affirm the order changing K.C.'s permanency goal to adoption.

Decree affirmed. Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2024