2021 PA Super 33

IN RE: ADOPTION OF A.H.           :     IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                                  :
APPEAL OF: C.W., MOTHER           :
                                  :
                                  :
                                  :
                                  :
                                  :
                                  :     No. 1032 MDA 2020

Appeal from the Decree Entered August 4, 2020,
in the Court of Common Pleas of Cumberland County,
Orphans' Court at No(s):  046-ADOPT-2020.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY KUNSELMAN, J.:                    **FILED MARCH 03, 2021**

In this matter, C.W. (Mother) appeals the orphans' court decree terminating her rights to 11-year-old son, A.H. (Child), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1] Mother also challenges the decision of the dependency court to change the goal of the proceedings from reunification with Mother to adoption by the foster parent. After careful review, we conclude Mother waived the goal change issue, and we affirm the termination decree.

The relevant factual and procedural history is as follows.  The family's involvement with Cumberland County Children and Youth Services (Agency) began in Summer 2009, after an incident where the two-month-old Child was injured when Mother attacked the Maternal Grandmother.  Child was

_____

[1] L.C. (Father) consented to the termination of his parental rights.

adjudicated dependent in September 2009 and placed with the Maternal Grandmother. After Mother received mental health treatment, Child was ultimately returned to Mother's care and the case apparently remained dormant for nearly ten years.

Then, in March 2018, the court removed Child from Mother's care when Mother was involuntarily committed for mental health treatment. Mother was discharged on April 4, 2018, but she did not comply with the recommendation that she seek further treatment. The court adjudicated Child dependent on April 23, 2018.

The Agency developed a permanency plan for Mother, which was revised multiple times throughout the dependency case. However, Mother's primary goals were: obtain mental health treatment; parenting; visitation; and to attain and maintain a safe environment for Child. The court placed Child in foster care following his removal; but we note Child was not placed with his pre-adoptive foster father until April 15, 2019. Child has resided there since.

In June 2020, the Agency petitioned the dependency court to change Child's goal from reunification to adoption; the Agency also petitioned the court to involuntarily terminate Mother's rights. The court held hearings on July 14 and 28, 2020, and ultimately granted the Agency's petitions. The court entered the termination decree on August 4, 2020.

Mother timely-filed this appeal. She presents the following issues for our review, which we restate for clarity:

1. Was the evidence presented sufficient for the trial court to find, by clear and convincing evidence, [that termination of Mother's parental rights was proper] under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)?

2. Was the evidence sufficient for the trial court to find, by clear and convincing evidence, that termination best serves [Child's] physical and emotional needs and welfare under 23 Pa.C.S.A. § 2511(b)?

3. Did the trial court abuse its discretion when it changed the goal to adoption?

*See* Mother's Brief at 4-5. [2]

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

_____

[2] Mother's appeal concerns three separate categories: the propriety of the termination under Section 2511(a); the propriety of the termination under Section 2511(b); and the court's decision to change the goal of the dependency proceedings from reunification to adoption under 42 Pa.C.S.A. § 6351(f). In each category, Mother lists a general heading and then an immediate subheading. The general headings ask whether the court abused its discretion, but the subheadings ask whether the Agency provided sufficient evidence. *See* Mother's Brief at 4-5. When consulting the corresponding argument portion of her brief, it is apparent that Mother's true aim is to challenge the sufficiency of the Agency's evidence in each category of her appeal. Thus, we restate Mother's questions presented to reflect the same.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

***In re C.M.K.***, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

We begin with Mother's first appellate issue, which corresponds with the first prong of the bifurcated termination analysis. We analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117

- 5 -

(Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. ***Id***.

Here, the court determined: that Mother suffers from untreated psychiatric disorders, including schizoaffective disorder – bipolar type and post-traumatic stress disorder; that her mental health disability rendered her incapable of parenting; and finally, that Mother's refusal to meaningfully treat her mental health meant that she could not remedy her parental incapacity. ***See generally*** Trial Court Opinion (T.C.O.), 9/10/20, at 1-11; ***see also id.*** at 3-7 (Orphans' Court Findings, ¶¶ 2-22).

In her brief, Mother largely seeks to relitigate her mental health diagnoses, drawing this Court's attention to the testimony and evaluations by doctors of her choosing. Although these doctors have diagnosed Mother with other, serious mental health disorders, all have questioned whether Mother actually suffered from schizophrenia – the diagnosis made by Geisinger Holy Spirit Hospital following her involuntary commitment at the dawn of this most recent dependency case. ***See*** Mother's Brief at 37. These doctors have diagnosed Mother with general anxiety disorder, attention-deficit hyperactivity disorder (predominantly inattentive type), and chronic post-traumatic stress disorder. ***Id***. at 36. Mother cites to them in the hope that we infer her mental health condition to be far less serious than what the orphans' court and the Agency suggest.

Mother's only legal citation to authority is ***In re A.L.D.***, 797 A.2d 326 (Pa. Super. 2002), which she cites for the proposition that termination is not

warranted if the parent makes reasonable efforts to overcome the barriers to reunification. *See* Mother's Brief at 29. It is unclear why Mother relies on this case, because in ***A.L.D.***, this Court also observed that "[i]f a parent fails to cooperate or appears incapable of benefiting from reasonable efforts supplied over a realistic period of time, the [A]gency has fulfilled its mandate and…the termination petition may be granted." ***A.L.D.***, 797 A.2d at 340 (citation omitted).

To be sure, the effect of Mother's mental health on her parenting ability was the essence of the court's determination under Section 2511(a)(2). Although Mother's argument largely pertains to the validity of her original schizophrenia diagnosis, the ultimate concern for the court was not whether Mother was schizophrenic, but whether Mother sought appropriate treatment for her mental health conditions in order to properly care for Child. Whatever ailments Mother suffers from, the court determined that they interfere with Mother's ability to parent.

The orphans' court explained why it was troubled by Mother's self-reported mental health treatment:

> Mother has mental health issues, which she only partially self-treats, rather than follow the Agency's or her own [c]ounselor's professional advice. Mother is doctor shopping in at least three states; she may have had other evaluations, but she only authorizes release of medical information on her terms. She does regularly see [a c]ounselor but only because it is on her terms. This may be the dosage of treatment that Mother can handle, which is satisfactory for her, but does not, and will not provide [Child] with the developmental, physical, and emotional essentials that he

needs now from a parent, and the permanency he needs long term. It is clear that while the necessary services to address Mother's mental health needs have been offered, she is unwilling or simply unable to do what needs to be done in the window of time available. No prognosis is given that her ongoing mental health condition will change anytime soon.

T.C.O. at 10.

The court was clearly alarmed by Mother's outright refusal to cooperate with the Agency. After all, the Agency was simply attempting to verify that Mother was, in fact, seeking the appropriate treatment for appropriate diagnoses and that she actually followed through with the corresponding professional recommendations. The court found Mother typically refused to submit to the Agency's mental health evaluations. The court determined further that, to the extent Mother did comply, Mother sought her own doctors, purposefully kept the Agency out of the loop, and then only participated in treatment insofar as Mother deemed appropriate.

Beyond Mother's lack of cooperation with the Agency, the more pressing issue was that Mother made insufficient progress to rectify her parental incapacity. By way of an example, Mother would often have emotional outbursts during her visits with Child. In turn, Child would display his own trauma, resulting in his own treatment. To be sure, the Agency acknowledged Mother made some progress. But as Mother notes, the Agency caseworker ultimately testified that Mother had not made enough progress to avoid termination. *See* Mother's Brief at 39. Meanwhile, Child had been out of

Mother's care for approximately 28 months at the time of the termination hearing.

After review, we conclude that the record supports the court's decision that Mother was incapable of parenting, pursuant to Section 2511(a)(2). Mother refused to work with the Agency in its attempt to verify her mental health diagnoses and treatment. To the extent that Mother made legitimate efforts to treat her mental health issues, the Agency was still able to demonstrate by clear and convincing evidence that Mother's progress, after 28 months, was insufficient. We conclude termination was warranted under this first prong of the termination analysis.

Next, we consider whether Mother's second appellate issue, which corresponds with the second prong of the bifurcated termination analysis; namely, whether the Agency satisfied its burden Section 2511(b). This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Importantly, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. ***See C.M.K.***, 203 A.2d at 264 (citation omitted).

Here, the orphans' court noted that Child loved his Mother, but that Child desired to be adopted by his foster parent. Child was appointed legal counsel, pursuant to 23 Pa.C.S.A. § 2313(a), who represented that Child seeks to remain with the pre-adoptive foster parent. The court observed Child and noted that Child appears to be thriving in his current environment. Finally, the court heard expert testimony from Dr. Howard Rosen, who conducted a bonding evaluation. Dr. Rosen opined that Child would not suffer irreparable harm from severing the bond he has with Mother, as Mother has not functioned as a primary caregiver for some time. ***See*** Notes of Testimony (N.T.1), 7/14/20, at 43. Ultimately, the court determined that termination best served the Child's needs and welfare. ***See*** T.C.O. at 3, 7.

Curiously, though Mother does not formally contest the effectiveness of Child's appointment of legal counsel, she utilizes this section of her brief to cast doubt on whether termination was actually Child's desired outcome. ***See*** Mother's Brief at 48-56. Mother concludes her argument by suggesting that Permanent Legal Custody (PLC) would be a better disposition. ***Id.*** at 55.

At the hearing, the pre-adoptive foster parent testified that Child said he wanted to say in his care. N.T. 1, at 37. The foster parent added that he did not talk with Child very much about the termination hearing, but

speculated that the Child is concerned about whether he will see his Mother again. *Id.* The foster parent also testified Child understands that, if Mother stabilizes, gets mental health care, and it is appropriate for Child to see her, then the foster parent will allow for contact. *Id.*

Likewise, Child's legal counsel represented that Child loves his Mother, but is aware of Mother's inability to meet her mental health needs. *See* Notes of Testimony (N.T. 2), 7/28/20, at 121; *see also* Legal Counsel's Brief at 10. The legal counsel represented that Child understood the termination proceedings, that he would like to have relationship with Mother, but that Child's preferred outcome of the termination hearing was to have permanency with the foster parent. *Id.* Regarding the potential for future contact between Mother and Child post-termination, Child's legal counsel represented that Child understood that it would be up to his foster parent to make this decision and trusted the foster parent to decide his best interests. *Id.* at 121-122. Therefore, to the extent Mother preserves any challenge to the propriety of Child's representation under Section 2313(a), we discern no error.

Insofar as Mother's argument can be transposed onto a proper Section 2511(b) analysis, the record supports the orphans' court decision to terminate. We recognize that the 11-year-old Child has spent the majority of his life with Mother. But in light of Mother's mental health struggles, and the two years Child has spent outside of her care, we cannot agree with Mother that their relationship is so necessary or beneficial that it should be preserved over termination. Rather, termination best serves Child's needs and welfare,

as it achieves the vital security, stability, and permanency currently missing from Child's life. Because Mother does not otherwise contest the court's determinations under Section 2511(b), we agree with the orphans' court that the Agency satisfied this second prong of the termination analysis.

Finally, we turn to Mother's third appellate issue, which concerns the court's decision to change the goal of the dependency proceedings from reunification to adoption. *See* 42 Pa.C.S.A. § 6351(f). But before we may address the merits of this issue, we must determine whether Mother preserved the issue. For the reasons below, we conclude that she has not.

In June 2018, our Supreme Court disapproved of the practice of filing a single notice of appeal from an order or judgment involving more than one docket number. *See generally Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). The Court observed that the "proper practice under [Pa.R.A.P.] 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket." *Walker*, 185 A.3d at 977. Accordingly, the Court determined, "[t]he failure to do so requires the appellate court to quash the appeal."

Here, Mother filed a single notice of appeal from the termination decree, which the orphans' court entered on Child's adoption docket (046-Adopt-2020). At first blush, there appears to be no violation of Pa.R.A.P. 341(a) or *Walker*. However, Mother also seeks to challenge the decision to change the dependency goal from reunification to adoption. The problem is that this goal change decision was issued by a separate order, on a separate docket, and

- 12 -

technically by a separate court. *See* Child's dependency docket (CP-21-DP-00128-2009). Notwithstanding Mother's appeal of the termination decree Mother did not appeal the goal change order, nor did she list the separate dependency docket. Procedurally, Mother seeks to bootstrap the goal change issue onto her termination appeal, without abiding by the proper Rules of Appellate Procedure. Because no appeal of the goal change decision was actually taken, we conclude Mother waived[3] her third issue.

Even if the goal change issue was properly before us, the effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption. *See Interest of D.R.W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force of effect.") (Citation omitted).

In sum, we conclude that the orphans' court did not abuse its discretion when terminating Mother's rights under Section 2511(a)(2) and (b). We conclude further that the Agency provided sufficient evidence to allow the orphans' court to reach this determination. Finally, we conclude Mother waived her third issue that the dependency court erred when it changed Child's goal from reunification to adoption.

Decree affirmed.

---

[3] Had Mother's defect been with her notice of appeal from the dependency docket, the proper remedy would be to quash the appeal. Here, no appeal was taken at all.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/03/2021