J-S25018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: W.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 858 EDA 2024 |

Appeal from the Order Entered February 29, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-DP-0000016-2023

| IN THE INTEREST OF: W.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 859 EDA 2024 |

Appeal from the Order Entered February 28, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2024-00001

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED SEPTEMBER 4, 2024**

E.H. ("Mother") appeals from the order changing the permanency placement goal for her minor child, W.H. ("Child"), to adoption, and from the decree terminating her parental rights. Although Mother filed a combined brief for both appeals, it does not contain any challenge to the termination decree. Mother confines her arguments to the propriety of the goal change. We therefore affirm the termination decree. Because the affirmance of the

termination decree necessarily renders the goal change moot, we dismiss the appeal from that order as moot.

Child was born in January 2022 to Mother and T.H. ("Father"). She was placed into emergency protective care by the Columbia County Court of Common Pleas in September 2022 and thereafter adjudicated dependent.[1] She was placed in the care of foster parents ("Foster Parents"). Foster Mother is Mother's cousin, and Foster Parents have adopted Child's biological sister. *See* Ex. 2 at 5.

In May 2023, the dependency case was transferred to Wayne County.[2] *See* Permanency Review Order, 6/7/23, at 1-2. The court held permanency review hearings in June and August of 2023. During these hearings, the permanency placement goal for Child was to return to her parent or guardian, with a concurrent goal of adoption. The court found Mother's compliance levels with Child's reunification plan to be minimal.

_____

[1] According to the petition for termination of parental rights, Columbia County Children and Youth moved for emergency protective custody of Child after receiving reports "concerning [M]other's mental health, domestic violence between parents, substance abuse by both parents and the fact that [M]other had her parental rights terminated to three children [in] Wayne County." Petition, 1/4/24, at ¶ 10(a). The agency also received allegations that Mother was a victim of sex trafficking and that Father was under investigation for sex trafficking. *Id.* at ¶ 10(b). Mother tested positive for cocaine in August 2022, and both Mother and Father tested positive for methamphetamines. *Id.* at ¶ 10(c)-(d). The agency also "found poor living conditions in the parents' home with multiple people living in the small two-bedroom apartment." *Id.* at ¶ 10(e).

[2] The certified record of the dependency case does not include any documents filed prior to the transfer of the case to Wanye County.

In January 2024, Wayne County Children and Youth Services ("CYS") filed a petition for a permanency goal change and a petition for termination of Mother's and Father's parental rights. The court held a hearing on the petitions on February 27, 2024. Following the hearing, the court issued an order changing Child's permanency placement goal to adoption and entered a decree terminating Mother's parental rights.[3] Mother appealed separately from both orders.

Mother raises only a challenge to the goal change:

> Whether the trial court erred as a matter of law in changing the goal from return home to parent or guardian to adoption.

Mother's Br. at 7.

As stated above, Mother does not raise any issue pertaining to the termination decree. Although Mother filed a notice of appeal from the decree terminating her parental rights, she omits any discussion of it in her brief. She thus waived any argument against the entry of that decree, and we will affirm it. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017).[4] As a result, her appeal from the goal-change order is moot. **See Int. of A.R.**, 311 A.3d 1105, 1114 (Pa.Super. 2023) (finding appeal from goal change moot

---

[3] The court did not docket the order terminating Mother's parental rights until the next day, on February 28, and did not docket the order changing the goal to adoption until two days following the hearing, on February 29, 2024.

[4] Likewise, the concise statement of matters complained of on appeal that Mother filed on the adoption docket references only the goal change order, and not the termination of parental rights. **See** Pa.R.A.P. 1925(b).

given termination of parental rights), *appeal denied*, 2024 WL 1650723 (Pa. 2024) (Table).[5]

If Mother's appeal from the goal change order were not moot, we would affirm. In deciding whether to change a child's permanency placement goal, the court is required to consider the factors listed in 42 Pa.C.S.A. § 6351(f). ***Int. of K.C.***, ---A.3d----, 2024 WL 3405623 at *3 (Pa.Super. filed July 15, 2024). The factors include:

> (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months.

***Id.*** (citation omitted). The court must also consider whether a foster parent "is following the reasonable and prudent parent standard" and whether "the child has regular, ongoing opportunities to engage in age-appropriate or developmentally appropriate activities." 42 Pa.C.S.A. § 6351(f)(12).

Guided by these factors, the court must determine whether the permanency placement plan is in the child's best interest. ***Int. of K.C.***, 2024 WL 3405623 at *3. While the court must consider a parent's progress, this

---

[5] ***See also In re D.K.W.***, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights are terminated, issues of custody and dependency under Juvenile Act are moot); ***Int. of A.M.***, 256 A.3d 1263, 1272-73 (Pa.Super. 2021); ***In re Adoption of A.H.***, 247 A.3d 439, 446 (Pa.Super. 2021).

does not require the court to "[put] a child's life . . . on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *Id.* (citation omitted).

We review a trial court's goal change order for an abuse of discretion. *Id.* This Court will not reweigh the evidence and the credibility determinations of the trial court, so long as the court's factual findings are supported by the record. *Id.* It is the purview of the trial court, not this Court, to "gauge the likelihood of the success of the current permanency plan" based on its factual findings and credibility determinations. *Id.*

Here, Mother concedes that Child's "placement continue[s] to be necessary based on neither parent's ability to provide a safe stable household for the minor child," and that "the foster home is following the reasonably prudent parent standard, and the minor child is participating in age-appropriate activities." *Id.* at 11-12, 17. However, Mother argues that she has made efforts to comply with the reunification goal by engaging in drug and alcohol treatment and participating in 73% of her offered visitations with Child. She asserts that the court's finding that she made some progress at both permanency review hearings demonstrates her efforts. She further contends that the goal of returning Child to her care remains feasible, because she "would take the steps necessary to address any and all safety concerns" and because she has "ma[de] strides in her treatment and hopes to have her daughter back in her home imminently." *Id.* at 13.

The trial court noted that Child was removed from Mother's care "due to concerns with domestic violence, substance abuse, and unstable housing." Pa.R.A.P. 1925(a) Opinion ("1925(a) Op."), filed 4/4/24, at 1. It recounted that the CYS representative, Stephanie Bryant, testified that Mother was incarcerated from June to August 2023 and then released to a Gaudenzia rehabilitation facility, where she resided at the time of the hearing. *Id.* at 2. Gaudenzia has not made any request for Child to be reunited with Mother during her stay through their usual reunification program, and all of Mother's visits with Child have been supervised. *Id.*

The court also credited Bryant's testimony that Mother "has never demonstrated that she could live independently and maintain her own well-being." *Id.* at 3. Bryant stated that "housing continues to be a concern and that [Mother] has not maintained stable housing for longer than six (6) months throughout [Child]'s dependency." *Id.* She testified that domestic abuse between Mother and Father "continues to be a concern as well." *Id.*; *see also* N.T., 2/27/24, at 44 (Bryant testifying, "[Mother] has not demonstrated, during the life of this dependency case, that she can maintain housing stability, that she can maintain her own mental health, that she can take medications as prescribed, that she can remain drug free and continue with outpatient services, and that she can make appropriate decisions around people that she allows around herself [and/or Child,] placing herself and [Child] at risk of harm").

The court found CYS had made reasonable efforts to effect Child's reunification with Mother, including "visitation, phone calls, communications with Columbia and Wayne County jails and with Gaudenzia, attempted home visits and an early intervention evaluation." 1925(a) Op. at 4. The court considered that Child had been in placement for 18 months, as well as Bryant's testimony that Child's placement with Foster Parents is "going very well," that they are "following the reasonable and prudent parent standard," and that Child "is bonded with her foster family and is happy and healthy." *Id.* at 1, 6. The court concluded that the goal of reunification was no longer appropriate nor feasible, nor in Child's best interest, "[b]ased on the parents' inability to comply with the permanency plan" and the "lack of permanency in [Child]'s life." *Id.* at 3-4.

The record sustains the court's determinations and reveals no abuse of discretion in the court's decision. That Mother made some progress during Child's 18-month placement does not render reunification with Mother an appropriate or feasible goal, given that the court credited Bryant's testimony regarding Mother's inability to safely parent Child.

Decree affirmed. Appeal from dependency order dismissed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  9/04/2024