J-S38012-24
J-S38013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: O.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 930 EDA 2024 |

Appeal from the Order Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0001092-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: O.R.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 931 EDA 2024 |

Appeal from the Decree Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-AP-0000316-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: O.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 932 EDA 2024 |

Appeal from the Order Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0001092-2020

J-S38012-24
J-S38013-24

IN THE INTEREST OF: O.R.S., A MINOR     :     IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: E.R., FATHER     :

: No. 933 EDA 2024

Appeal from the Decree Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000316-2023

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:       **FILED DECEMBER 20, 2024**

C.S. ("Mother") and E.R. ("Father") (collectively, "Parents") appeal from the February 29, 2024 decrees granting the petitions filed by the Philadelphia Department of Human Services ("DHS" or "the Agency") and involuntarily terminating their parental rights to their biological son, O.S. a/k/a O.R.S. ("Child"), born in October 2016.[1] Parents further appeal from the February 29, 2024 order changing Child's permanency goal to adoption.[2] After careful

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decree of the same date, the trial court additionally terminated the parental rights of an unknown putative father to Child. No unknown putative father filed an appeal or participated in the instant appeals.

[2] As Parents raise similar issues arising from the same factual and procedural events, we *sua sponte* consolidate the above-captioned cases for disposition. *See* Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

- 2 -

consideration, we affirm the termination decrees. We further affirm the goal change order as it relates to Mother's appeal and dismiss Father's appeal from the goal change order as moot.

Child became known to DHS through a General Protective Services ("GPS") report in September 2020 that raised allegations of Mother's drug use, untreated mental health issues, neglect, and abandonment of Child with maternal relatives. *See* N.T., 2/29/24, at 6-7. Father's whereabouts were unknown at the time. *See id.* at 7-8.

The Agency filed a petition for dependency on October 14, 2020, at which time it also alleged a lack of appropriate housing, referencing Mother's alleged homelessness. Following a hearing, the trial court adjudicated Child dependent on October 22, 2020. *See id.* at 7. The court placed Child in the kinship home of his maternal grandmother, where he remained through the time of the subject hearing.[3] *See id.* at 7-8.

The court, in relevant part, referred Mother to the Clinical Evaluation Unit ("CEU") for a dual diagnosis mental health and substance abuse assessment and random drug and alcohol screening. Additionally, the court established a permanency goal of reunification and, as part of her single case plan provided through the Community Umbrella Agency ("CUA"), Mother was

---

[3] The record reveals that Child's uncle resided in the same kinship home. *See* N.T., 2/29/24, at 7-8.

required to: address her mental health; participate in services through the Achieving Reunification Center ("ARC"), including parenting and housing programs; obtain suitable and appropriate housing; address drug and alcohol issues; provide proof of employment; participate in supervised visitation; comply with CUA and court orders; and sign releases. *See id.* at 9, 11. These requirements remained substantially similar throughout the dependency proceeding and were communicated to Mother over the phone and in person. *See id.* at 8-9, 16-17. Mother understood compliance therewith was necessary for reunification. *See id.* at 17.

Throughout the ensuing dependency, the court held regular permanency review hearings. In March 2022, the court acknowledged Mother's progress with respect to her permanency requirements, including completion of a parenting program and engagement in mental health and drug and alcohol treatment. Thereafter, in June 2022, the court characterized Mother as fully compliant with her permanency requirements and granted unsupervised visitation. However, in October 2022, the court found Mother to be minimally compliant with her permanency requirements. Thus, the court mandated supervised visitation. Further, the court directed Mother to reengage in drug and alcohol treatment and to comply with mental health treatment. The court then found Mother non-compliant with her permanency requirements in February and May 2023. In fact, in February 2023, the court indicated that

Mother's whereabouts were unknown and that she had not visited Child. She did not resume visitation until May 2023. *See* Dependency Docket.

In the meantime, Father became known to DHS in mid-2021 and was then incarcerated from September 2021 to January/February 2023.[4] *See* N.T., 2/29/24, at 20-21, 41, 62, 87-88, 92. He was uninvolved prior to his incarceration and, following his release, did not contact the CUA until October 2023. *See id.* at 21, 63, 88, 92-93. Prior to this time, Father made no outreach to DHS, CUA or Child. *See id.* at 30, 38, 87-88. In furtherance of reunification, as part of his single case plan, Father was required to: make himself available to CUA and follow all recommendations; provide proof of housing and employment; participate in the ARC for parenting; provide proof of mental health treatment; engage in supervised visitation; submit to a CEU assessment and random drug and alcohol screening; and comply with court orders. *See id.* at 18. These requirements were communicated to Father in 2021 and 2023 over the phone and in person and he understood compliance therewith was necessary for reunification. *See id.* at 19-20. In permanency review orders, the court largely characterized Father as non-compliant. *See generally* Dependency Docket.

As a result, on August 21, 2023, DHS filed a petition for the involuntary termination of Parents' parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),

---

[4] Father has an extensive criminal history but the exact nature of the charges for which he was incarcerated is unclear from the certified record.

(2), (5), (8), and (b), as well as a petition to change Child's permanency goal from reunification to adoption. The trial court ultimately held a combined evidentiary hearing on the petitions on February 29, 2024. Child, then seven years old, was represented by a guardian *ad litem*, Meredith Rogers, Esquire, and separate legal interest counsel, Lue Frierson, Esquire, in compliance with 23 Pa.C.S.A. § 2313(a).[5] DHS presented the testimony of the CUA case manager, Eunikue Dutton-Vass.[6] Additionally, Parents each testified on their own behalf.

By decrees dated and entered February 29, 2024, the trial court involuntarily terminated Parents' parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). By separate order also dated and entered February 29, 2024, the court changed Child's permanency goal from reunification to adoption.

Parents separately filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P.

---

[5] ***See In re K.M.G.***, 240 A.3d 1218, 1238 (Pa. 2020) (holding appellate courts should engage in "limited *sua sponte* review" concerning a child's statutory right to counsel in the termination context).

While neither Attorney Rogers nor Attorney Frierson submitted a brief to this Court, both argued in support of termination of Parents' parental rights and the goal change to adoption at the conclusion of the subject hearing. ***See*** N.T., 2/29/24, at 129-131.

[6] Ms. Dutton-Vass had been assigned to Child's case since August 2022. ***See id.*** at 5.

1925(a)(2)(i) and (b).  The trial court filed responsive Rule 1925(a) opinions on June 3, 2024.

On appeal, Parents challenge the sufficiency of the evidence pursuant to Section 2511(a) and (b).  **See** Mother's Brief at 4; Father's Brief at 3. Additionally, Father argues that the trial court erred by changing Child's permanency goal from reunification to adoption.  **See id.** at 17-19.[7]

As to the termination of parental rights, our standard of review in this context is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record.  Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

_____

[7] We note with disapproval a procedural deficiency in Mother's brief. Specifically, organizationally, although Mother offers headings and points of separation, these do not mirror the specific distinct issues raised by Mother in her statement of questions involved or, as in one instance, the issue raised in the heading.  **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.").  However, as we are able to discern the general issues raised and related arguments, and we perceive no prejudice, we proceed with the merits of Mother's appeal.  **See** Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). As such, we limit our discussion to Section 2511(a)(2) and (b),[8] which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[8] Based on this disposition, we need not review Parents' arguments with respect to Section 2511(a)(1), (5), and (8). However, by analyzing Section 2511(a)(2), we make no conclusions as to the validity of the decrees pursuant to those subsections of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

23 Pa.C.S.A. § 2511(a)(2), (b).

To prove the applicability of Section 2511(a)(2), the party petitioning for termination must establish: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Subsection (a)(2) emphasizes the child's present and future needs, not the parent's refusal to perform their duties and thus "should not be read to compel courts to ignore a child's need for a stable home and strong continuous parental ties. . . . **This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it**." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation omitted) (emphasis in original). Section 2511(a)(2) grounds are not limited to affirmative misconduct; they may also include acts of refusal and incapacity to perform parental duties. *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by Interest of K.T.*, 296 A.3d 1085, 1110 n.23 (Pa. 2023). We have long recognized that "[p]arent are required to make diligent efforts towards the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

Instantly, Parents assail the trial court's conclusion, based on the testimony of Ms. Dutton-Vass, that DHS established the statutory grounds to

terminate their parental rights pursuant to Section 2511(a)(2). *See* Mother's Brief at 13-14; Father's Brief at 13-14; *see also* Trial Court Opinion (Mother), 6/3/24, at 19-21; *See* Trial Court Opinion (Father), 6/3/24, at 18-20. We analyze Mother's claim first wherein she concedes her ongoing struggles with substance abuse and mental health. *See* Mother's Brief at 13. Nevertheless, Mother maintains that she "worked to meet her objectives to the best of her abilities" and baldly asserts that she has the present capacity to care for Child. *See id.* at 13-14. We disagree.

Ms. Dutton-Vass testified that Mother was not then engaged in drug and alcohol treatment and, to her knowledge, Mother had never successfully completed said treatment. *See id.* at 12-13, 56. By her own admission, Mother experienced a relapse in or around October 2022, and entered a rehabilitation program in January 2023. *See id.* at 110-111. Further, she recently failed to report for a forthwith screen at the last court hearing on December 12, 2023, and only appeared for one of three random screens between January and February 2024, which was positive for marijuana. *See id.* at 14-16. Ms. Dutton-Vass testified that Mother had not provided a medical marijuana card or related prescription. *See id.* at 16, 108.

Likewise, Ms. Dutton-Vass testified that Mother had not completed the required housing program through the ARC.[9]  *See id.* at 11.  According to Ms. Dutton-Vass, Mother had informed Ms. Dutton-Vass's supervisor a few weeks prior to the subject hearing that she was residing at a new address but failed to provide the CUA with the specific address.  *See id.* at 11-12.  Further, Mother testified that she was residing in one room of a home at the time of the hearing.  *See id.* at 95.

Finally, Mother had only been engaged in mental health treatment since November 2023.  *See id.* at 9-10, 56, 98.  She readily conceded to inconsistent engagement in mental health treatment throughout the dependency proceeding.  *See id.* at 97-98; *see also id.* at 56-57.  Indeed, Mother explained that she discontinued services that she perceived as not helping her but rather "push[ed]" medication.  *See id.* at 98, 124-125.  Thus, issues related to substance abuse, housing, and mental health persisted and still plagued Mother at the time of the subject hearing, over three years after Child's placement.

With respect to Father, in finding grounds for termination of his parental rights pursuant to Section 2511(a)(2), the trial court emphasized Father's lack of engagement with Child's permanency plan.  *See* Trial Court Opinion

---

[9] Mother testified that she was successfully discharged from the ARC the day prior to the hearing.  However, Ms. Dutton- Vass testified that Mother had advised her on the day of the hearing that she was in fact still engaged with the ARC.  *See* N.T., 2/29/24, at 11, 101.

- 12 -

(Father), 6/3/24, at 18-20. Father, however, focuses solely on incapacity, arguing that the record evidence does not support a finding that he is incapable of parenting Child. ***See*** Father's Brief at 14. This argument fails.

The record reveals that Father was incarcerated from September 2021 to January/February 2023. ***See id.*** at 20-21, 41, 62, 87-88, 92. By his own admission, he was not involved with Child prior to his incarceration and did not make his whereabouts known to the CUA until October 2023, approximately eight months following his release. ***See id.*** at 63, 88, 92-93; ***see also id.*** at 21. Prior to this time, Father made no outreach to DHS, CUA, or Child. ***See id.*** at 30, 38, 87-88. Moreover, Ms. Dutton-Vass then indicated a further gap in communication until a December 12, 2023 court hearing. ***See id.*** at 37-38, 42-43. Notably, this is the first court hearing in which Father participated.

Since October 2023, Ms. Dutton-Vass assessed Father's housing, a studio apartment in a three-story home, and deemed it inappropriate for Child. ***See id.*** at 22-23.

From December 2023 through February 2024, Father participated in one forthwith and three random drug and alcohol screens and all were positive for marijuana. ***See id.*** at 24-25. Despite the proffer of a medical marijuana card at the subject hearing, Father obtained this card on February 16, 2024, following his last screen and just prior to the subject hearing. ***See id.*** at 73; ***see also*** Father's Exhibit 2. Additionally, although Father testified that he

had attended Crossroads, a drug and alcohol treatment and mental health treatment provider, since 2019, he admitted that he had not attended a mental health appointment since March 2023. **See** N.T., 2/29/24, at 23, 70, 72, 90-91.

Moreover, and perhaps most importantly, Father had no contact with Child and did not request visitation prior to October 2023. From December 2023 until the subject hearing, in addition to several virtual visits, Father engaged in a total of four in-person visits with Child. **See id.** at 25-26, 29-30, 38-39. Father therefore failed to engage with Child, DHS or CUA, or the necessary services to achieve reunification throughout the vast majority of the dependency proceeding and until several months after the filing of the subject petitions.

Hence, we discern no abuse of discretion by the trial court in concluding that termination of parental rights pursuant to Section 2511(a)(2) is warranted. The record substantiates the conclusion that Parents' repeated and continued incapacity, neglect, and/or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. **See A.H.**, 247 A.3d at 443. Moreover, Parents cannot or will not remedy this situation. **See id.** At the time of the subject hearing, Child had been in placement for more than three years. We reiterate that "[p]arent[s] are required to make diligent efforts towards the reasonably prompt assumption of full parental duties." **Id.** at 443. As this Court has

stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Having found sufficient grounds for termination pursuant to Section 2511(a)(2), we must next determine whether termination was proper under Section 2511(b). Section 2511(b) affords "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

- 15 -

***K.T.***, 296 A.3d at 1105-06 (cleaned up).

In doing so, trial courts must examine the effect on the child of severing such a bond, which requires "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id.*** at 1109. Our Supreme Court has explained:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm. ***See E.M.***, 620 A.2d at 484 ("a beneficial bonding could exist between a parent and child, such that, if the bond were broken, the child could suffer extreme emotional consequences").

***K.T.***, 296 A.3d at 1109-1110 (some citations omitted). As such, the Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." ***Id.*** at 1114.

The Court recognized that bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." ***Id.*** at 1109. It is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." ***M.E.***, 283 A.3d at 839 (cleaned up). It is further within the province of the trial court to "consider the totality of the circumstances when performing a needs

and welfare analysis." *Id.* We will not disturb such an assessment if the court's factual findings are supported by the record. *Id.*

Parents both essentially purport that they were actively engaged in successful supervised visitation with Child. Parents contend that they are entitled to additional time to further bond with Child. *See* Mother's Brief at 16-17; Father's Brief at 16-17.

Relying on the testimony of Ms. Dutton-Vass, whom it found credible, the trial court determined that no bond exists between seven-year-old Child and either Mother or Father. Instead, the court concluded that Child shared a bond with his maternal grandmother. *See* Trial Court Opinion (Mother), 6/3/24, at 21-22; Trial Court Opinion (Father), 6/3/24, at 20-21. This is supported by the certified record.

Indeed, the certified record corroborates that Child does not have a necessary and beneficial bond with Parents. Specifically, Ms. Dutton-Vass testified, "Child knows that Mother is his mother, but a bond, they don't have. He knows that's his mother. He cares for her, but he looks to his maternal grandmother and aunts for his basic needs and everyday things that he needs, as well as safety." N.T., 2/29/24, at 26. She recounted that Child exhibits behavioral issues at both home and school following visitation with Mother. *See id.* at 27. Significantly, Ms. Dutton-Vass reported that Mother failed to visit with Child from October 2022 to May 2023. *See id.* at 27-28. While such behavioral issues waned during this time period, Ms. Dutton-Vass

indicated that they resumed upon reestablishment of visitation. ***See id.*** at 28.

Likewise, Child had no contact with Father prior to Father's outreach to the CUA in October 2023. ***See id.*** at 30. Noting that Child had only commenced supervised visitation with Father in December 2023, Ms. Dutton-Vass stated, "Child knows Father as [")M["]. He does not call him dad. He looks -- he still looks to his maternal grandmother and aunts for his daily basic needs and safety. So, I don't see a -- a bond there with father." ***Id.*** at 29.

Conversely, Ms. Dutton-Vass recognized a "great bond" between Child and his maternal grandmother. ***See id.*** at 30-31. She explained:

> They have a great bond together. They celebrate a lot of holidays together. Re -- Maternal Grandmother ensures that Child is at school every single day, medical, dental, vision, now his mental health -- well, individual therapy that will start to take place. Grandmother takes him on outings.
>
> He's engaged in some afterschool activities, some of the sports that he likes, and on the weekends he spends a lot of time with his maternal aunts, maternal uncles, and cousins.

***Id.*** at 31. She further confirmed that Child relies on his maternal grandmother for his basic needs and safety, as well as for love and support. ***See id.*** at 31. In fact, Child would like to stay with his maternal grandmother. ***See id.*** at 34. As a result, Ms. Dutton-Vass opined that there would be no irreparable harm if parental rights were terminated, and it would serve Child's best interests to be freed for adoption. ***See id.*** at 31-32.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's holding that termination of Parent's parental rights was also warranted pursuant to Section 2511(b).

We now turn to Parents' appeals from the goal change order. We observe that Mother did not assert an error with respect to it in her Rule 1925(b) statement. In addition, Mother failed to raise an issue regarding the goal change order in the statement of questions involved and argument sections of her brief. Therefore, Mother has waived any claim concerning the goal change order. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citations omitted) (explaining this Court will not review an appellant's claim unless it is included in both the concise statement and statement of questions involved, developed in his or her argument, and supported by citation to relevant legal authority). Further, given our disposition concerning termination, Father's appeal from the goal change order is moot.[10] *See Int. of A.M.*, 256 A.3d 1263, 1272-1273 (Pa. Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights).

Accordingly, we affirm the decrees involuntarily terminating Parents' parental rights pursuant to Section 2511(a)(2) and (b). Further, we affirm

---

[10] Even if not moot, for the reasons we have already discussed throughout this memorandum with respect to termination, the record confirms that changing Child's respective permanency goal to adoption is in his best interest. *See In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011).

the goal change order as it relates to Mother's appeal and dismiss Father's appeal from the goal change order as moot.

Decrees affirmed. Order affirmed. Father's appeal from goal change order dismissed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/20/2024